Stanley M. GROSSMAN,
Plaintiff-Appellant,

v.

Edward C. JOHNSON, 3rd, et al.,
Defendants-Appellees.

No. 81–1348.

United States Court of Appeals,
First Circuit.

Argued Nov. 5, 1981.
Decided March 29, 1982.

---

Richard M. Meyer, Washington, D. C., with whom Avram G. Hammer, Boston, Mass., and Milberg, Weiss, Bershad & Spec-

---

thrie, New York City, were on brief, for appellant.

James S. Dittmar, Boston, Mass., with whom Berman, Dittmar & Engel, P. C., Boston, Mass., was on brief, for appellees Edward C. Johnson, 3d, et al.

E. Milton Farley, III, Richmond, Va., with whom Sumner H. Babcock, E. Susan Garsh, Bingham, Dana & Gould, Boston, Mass., John W. Riely, Joseph C. Kearfott and Hunton & Williams, Richmond, Va., were on brief, for appellees Dwight L. Allison, Jr., et al.

Jerome P. Facher, Boston, Mass., with whom Harry T. Daniels, James R. Gomes, Hale & Dorr, Peter M. Saparoff, and Gaston Snow & Ely Bartlett, Boston, Mass., were on brief, for appellee Fidelity Municipal Bond Fund, Inc.

Richard A. Kirby, Sp. Counsel, Washington, D. C., with whom Ralph C. Ferrara, Gen. Counsel, Paul Gonson, Sol., Edward F. Greene, Gen. Counsel, Jacob H. Stillman, Associate Gen. Counsel, Robert Mills and Louis C. Whitsett, Attys., Washington, D. C., were on briefs, for the Securities and Exchange Commission, amicus curiae.

Before CAMPBELL, and BOWNES, Circuit Judges, and DAVIS,* Judge.

DAVIS, Judge.

Plaintiff-appellant Stanley M. Grossman brought this derivative action in the District Court for Massachusetts, under the Investment Company Act of 1940, as amended, 15 U.S.C. §§ 80a–1 et seq. (1976) (the Act).[1] He is and has been a shareholder of Fidelity Municipal Bond Fund, Inc. ("the Fund"), a registered open-end investment company, and he sues the Fund's investment adviser, Fidelity Management & Research Company ("FMR"), the corporation that is the sole owner of that adviser ("FMR Corp."), the affiliated directors of the Fund, as well as most of the unaffiliated directors (whom we shall call "disinter-

---

1. For the purposes of our limited disposition, we rest on facts alleged by plaintiff in his amended complaint, and merely capsule the facts and proceedings.

ested").[2]  Against these defendants, Grossman makes two charges: (a) breach of fiduciary duty to the Fund with respect to the allegedly excessive amount of advisory fees paid to FMR by the Fund; and (b) breach of fiduciary duty to the Fund by failing to recapture (or have recaptured) excessive underwriting commissions, discounts and spreads paid by the Fund on its purchases of securities.  Before instituting the suit, plaintiff made no demand on the Fund or its directors to bring or prosecute an action on either of these two bases.

Defendants moved to dismiss the complaint, asserting, as one point, that plaintiff had failed to comply with Rule 23.1 of the Federal Rules of Civil Procedure, governing demand by shareholders in derivative actions.  During the lengthy argument on those motions, the District Court suggested that it might be advisable, it might even end the controversy, for plaintiff to send a demand letter to the directors specifying his position, although the litigation had already commenced.  After consideration, plaintiff did make such demand.

The District Court then stayed action on the motion and ordered the "disinterested" directors [3] to review the demand and report back to the court.  These directors delegated responsibility to a Special Committee composed of the two directors who were not defendants (see note 3, supra).  The latter retained a former Chairman of the Securities and Exchange Commission (and his outside law firm) to make a study and render a report on the issues presented by plaintiff's demand.  A lengthy report was made, concluding that there had been no statutory violation or breach of fiduciary duty on either branch of the suit, and recommending that the Special Committee seek to have this suit dismissed.  The Committee accepted that recommendation.

Defendants then moved to dismiss the amended complaint,[4] and, alternatively, for summary judgment, urging two grounds which the District Court considered: (a) the failure to make a proper and timely demand, and (b) the court should accept the Special Committee's good faith "business judgment" that the suit should be terminated.  In the decision now before us, the District Court accepted both of these contentions, alternatively.  89 F.R.D. 656 (1981).  Judgment was entered for defendants.  For the reasons to be given in Parts I, II and III of this opinion, we affirm on the former ground, by-passing the latter.

## I

Rule 23.1 of the Rules of Civil Procedure ("Derivative Actions by Shareholders") declares:

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.  The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.  The derivative action may not be maintained if it appears that the plaintiff does not

**2.** The "affiliated" directors own 5% or more of the shares of FMR Corp. and are officers and directors of FMR.  The "unaffiliated" directors do not have those connections with FMR and FMR Corp.

**3.** These were the "unaffiliated" director defendants, plus one unaffiliated director who had not

been sued though he had previously joined the board, and one unaffiliated director who became a board member after the suit had been brought (and accordingly was not sued).

**4.** In the course of the proceedings plaintiff had been permitted to file an amended complaint.

fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

Plaintiff urges that Rule 23.1 is wholly inapplicable to that portion of his case charging the payment of excessive advisory fees to the investment adviser (FMR), which is brought under the special provisions of section 36(b) of the Act, 15 U.S.C. § 80a–35(b) (1976). In this segment of our opinion we consider that contention.[5]

Section 36(b), added in 1970, prescribes a separate statutory claim for excessive advisory fees to an investment adviser.[6] The Securities and Exchange Commission and security holders of the investment company are specifically authorized to sue "on behalf of such company" to recover such fees. The section (among other limitations) places on the plaintiff the burden of proof of showing a breach of fiduciary duty, restricts monetary relief to actual damages and to the persons receiving such compensation, establishes a one-year statute of limitations on recovery, and provides that approval or ratification by the paying company's directors of the compensation to the investment adviser "shall be given such consideration by the court as is deemed appropriate under all the circumstances."

There is no express reference to Rule 23.1 or to demand by the suing shareholder, but plaintiff gives several reasons why, in his

---

**5.** Plaintiff also says that, even if Rule 23.1 applies, he was excused from making a demand on the directors for this aspect of his complaint. We discuss that point in Part II, *infra.* As for the recapture of commissions, Grossman does not argue that Rule 23.1 is wholly inapplicable; he mainly says, instead, that he was excused from making a demand. We also consider that argument in Part II, *infra.* On both sectors of his case, plaintiff insists, in addition, that the demand he made after the beginning of the suit was adequate compliance with Rule 23.1. Part III, *infra,* deals with that premise.

The Securities and Exchange Commission, which participated in this appeal as amicus curiae, takes no position on the applicability of the demand provisions of Rule 23.1 or the alleged excuses for noncompliance.

**6.** The relevant parts of section 36(b) read:

"(b) For the purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments [including directors], for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person. With respect to any such action the following provisions shall apply:

(1) It shall not be necessary to allege or prove that any defendant engaged in personal misconduct, and the plaintiff shall have the burden of proving a breach of fiduciary duty.

(2) In any such action approval by the board of directors of such investment company of such compensation or payments, or of contracts or other arrangements providing for such compensation or payments, and ratification or approval of such compensation or payments, or of contracts or other arrangements providing for such compensation or payments, by the shareholders of such investment company, shall be given such consideration by the court as is deemed appropriate under all the circumstances.

(3) No such action shall be brought or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments. No award of damages shall be recoverable for any period prior to one year before the action was instituted. Any award of damages against such recipient shall be limited to the actual damages resulting from the breach of fiduciary duty and shall in no event exceed the amount of compensation or payments received from such investment company, or the security holders thereof, by such recipient."

view, the structure, terms, and purpose of the provision show that the Rule is wholly inapplicable to such excessive fee suits. We divide these arguments into three groups, first, those that we believe to have little merit, second, those that have substantial weight but are subject to countervailing arguments which likewise have merit, and then we discuss the considerations we believe to tip the balance against plaintiff on this question.

■ *A.1.* Appellant says initially that Rule 23.1 must be wholly inapplicable because, though the statute says that suit must be brought on behalf of the investment company and in that sense is a "derivative" action, section 36(b) does not permit an action by the investment company itself (but only by the SEC or a security holder).[7] We cannot believe, however, that, for example, a new and independent board of directors, intent on recovering excessive fees from the investment adviser, would be precluded from suing under section 36(b).[8] That section is explicit that recovery by a shareholder is to be on behalf of the investment company and that his suit must be brought on the same behalf. With those clear requirements, Congress could well have believed that, though it was appropriate to specify that the Commission and shareholders had the new statutory cause of action under section 36(b), *see Moses v. Burgin,* 445 F.2d 369, 373 n.7 (1st Cir. 1971), it was unnecessary to say with particularity that the company also did. A suit "on behalf of such company" (a phrase which is more than merely one "for the benefit of the company") is normally a derivative action that the company could itself bring.

Plaintiff, whose complaint and amended complaint both allege that he brings this action "derivatively on behalf of the Fund," seems to have originally agreed that his suit under this section could have been brought by the Fund. Although subsection (3) directly forbids an action under section 36(b) against any person "other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments"—barring as defendants, in this instance, the "disinterested" directors and the Fund itself—this whole proceeding (including that part under section 36(b)) was brought against those "forbidden" defendants,[9] apparently on the correct assumption that this is a derivative suit to enforce rights the Fund could itself enforce, and in which the company and its directors should be joined in the ordinary fashion.

2. Another of plaintiff's points we reject outright is the analogy to section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) (1976) ("profits from purchase and sale of security within six months"), which has been held excluded from certain non-demand parts of Rule 23.-1. *Dottenheim v. Murchison,* 227 F.2d 737, 739–741 (5th Cir. 1955), *cert. denied,* 351 U.S. 919, 76 S.Ct. 712, 100 L.Ed. 1451 (1956); *Blau v. Mission Corp.,* 212 F.2d 77, 79 (2d Cir.), *cert. denied,* 347 U.S. 1016, 74 S.Ct. 872, 98 L.Ed. 1138 (1954). On the demand point, however, section 16(b) is plainly inapposite because it embodies its own express demand requirement different from that in Rule 23.1.[10] If anything, that special demand provision indicates that Congress considered a demand essential for a shareholder suit even though Congress may have dispensed with other aspects of what is now Rule 23.1.

---

**7.** The first sentence of Rule 23.1, *supra,* requires that "the corporation or association [shall have] failed to enforce a right *which may properly be asserted by it"* (emphasis added).

**8.** One reason why the directors might wish to use section 36(b), instead of employing a more conventional corporate suit, is that subsection (1) expressly removes the need to allege or prove "personal misconduct" on the part of any defendant. In addition, the general stan-

dard for recovery might be easier under section 36(b) than in a non-statutory action.

**9.** This is also true of the amended complaint.

**10.** Suit may be brought "if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter * * *." 15 U.S.C. § 78p(b).

3. A related argument we cannot accept is that section 36(b) speaks of suit by a "security holder", a term which it is said could cover pure debenture holders or other bare creditors who, not being shareholders or members, cannot comply with the demand aspects of Rule 23.1. The simple answer, we think, is that Congress used the general term "security holder" in section 36(b) to cover shareholders of mutual funds and like investors akin to stockholders, whom Rule 23.1 undoubtedly fits. The phrase was not designed to allow mere creditors to make use of section 36(b).[11]

B. Plaintiff makes three stronger arguments for total exclusion of the demand requirement of Rule 23.1—but each seems to us to have a substantial counterbalance.

1. Grossman's chief claim is that a demand would be futile because the directors, even the "disinterested" ones, cannot by themselves terminate a section 36(b) suit through the good faith exercise of reasonable "business judgment". We do not today decide whether or not the directors are so disabled—but it is undeniable that there are very serious reasons for accepting that proposition. *Burks v. Lasker*, 441 U.S. 471, 484, 99 S.Ct. 1831, 1840, 60 L.Ed.2d 404 (1979), a case on the directors' power to terminate a suit under other portions of the Act where section 36(b) was not involved, expressly contrasted the latter provision: "And when Congress did intend to prevent board action from cutting off derivative suits, it said so expressly. Section 36(b), 84 Stat. 1428, 15 U.S.C. § 80–a–35(b)(2), added to the Act in 1970, performs precisely this function for derivative suits charging breach of fiduciary duty with respect to adviser's fees." [12] The Supreme Court was referring to § 36(b)(2) (note 6, *supra*) which can easily be read to give the court, rather than the directors, the ultimate power to decide the propriety of the fees.

Nevertheless, even on that interpretation of the statute, a demand would not be futile. It would give the independent directors the opportunity to study the problem and decide whether to accede, in whole or in part, to the complainant's views. When it added § 36(b), Congress also deliberately strengthened the position of independent directors, including their dealing with advisory fees. *See Burks v. Lasker, supra*, 441 U.S. at 482–485, 99 S.Ct. at 1839, 1840–1841. They were not designed to be ciphers or to be overlooked. Although the court would decide for itself (on the view we accept *arguendo*) the merits of the claim of excessive compensation, the independent and disinterested directors still have a substantial role. Surely, their decision to side with the complainant (entirely or in part) would have important consequences, and even their knowledgeable disagreement with the demand might be deemed worthy by the court of grave consideration under § 36(b)(2).

2. Plaintiff's appeal to the legislative history (of the 1970 amendments) to show that section 36(b) was exempted from the demand requirement of Rule 23.1 seems, at the very best for him, to end in a draw. There was, as he points out, emphasis on the prior ineffectiveness of independent directors with respect to advisory fees, the need for strengthening then section 36, and the significant role of the courts in determining the proper level of fees. *See the S. E. C. 1966 Report on Investment Companies*, H.R.Rep. No. 2337, 89th Cong., 2d Sess., 131, 143, 146 (1966); *Investment Company Act Amendments of 1969: Hearings of the Senate Committee on Banking and*

---

11. The legislative history of § 36(b) speaks of suits thereunder by "shareholders". *See* S.Rep.No. 184, 91st Cong., 1st Sess., *reprinted in* [1970] U.S.Code Cong. & Ad.News 4897, 4910; H.R.Rep.No. 2337, 89th Cong., 2d Sess. 143, 146 (1966) (SEC report); 115 Cong.Rec. 13699 (1969); *Investment Company Act Amendments of 1969: Hearings of the Senate Committee on Banking and Currency*, 91st Cong., 1st Sess. 1–2 (1969).

12. Though this statement may technically have been "dictum" in the sense that *Burks* did not itself involve section 36(b), the Court's observation formed an integral part of its reasons for holding that the directors had broader powers under other parts of the Act. The statement was by no means gratuitous or *obiter.*

*Currency,* 91st Cong., 1st Sess. 1–2 (1969); S.Rep. No. 184, 91st Cong., 1st Sess., 2, 6–7, *reprinted in* [1970] U.S.Code Cong. & Ad. News 4897, 4898, 4903; 115 Cong.Rec. 13699 (1969). But these themes are all fully consistent with the continued operation of the demand part of Rule 23.1, which would not impede or contradict any of the stated purposes. Indeed, the history shows an equal and concurrent stress on the authority and responsibility of the directors. S.Rep. No. 184, 91st Cong., 1st Sess. 7, *reprinted in* [1970] U.S.Code Cong. & Ad.News 4897, 4903. ("The section [section 36(b)] is not intended to shift the responsibility for managing an investment company in the best interest of its shareholders from the directors of such company to the judiciary"; and "the section is not designed to ignore concepts developed by the courts as to the authority and responsibility of directors"). At the same time, there was a concern to discourage ·unjustified derivative suits. H.R.Rep. No. 1382, 91st Cong., 2d Sess. 8 (1970); *Mutual Fund Amendments: Hearings on H.R. 11995, S. 2224, H.R. 13754 and H.R. 14737 Before the Subcomm. on Commerce and Finance of the House Comm. on Interstate and Foreign Commerce,* 91st Cong., 1st Sess. 201, 662, 860 (1969). That aim is closely connected with Rule 23.1, which has such a goal among its functions.

When the inquiry narrows down to the continued relevance of the Federal Rules, especially Rule 23.1, there is some direct indication that the Rules were or may have been regarded as barriers to unjustified derivative suits. The Chairman of the Securities and Exchange Commission so reported. *Id.* at 201 (" * * * there are adequate safeguards under the Federal Rules of Civil Procedures [sic] and under this bill to prevent unjustified shareholder litigation"); to the same effect, *see id.* at 860, where the Chairman specifically mentioned "*e.g.* Rule 23, FRCP" as one of the "sufficient safeguards against frivolous or harassing lawsuits." Plaintiff cites a comment of another Commissioner disfavoring "the interposition of procedural obstacles", *Investment*

*Company Act Amendments Act of 1969: Hearings on S. 34 and S. 296 Before the Senate Comm. on Banking and Currency,* 91st Cong., 1st Sess. 30 (1969), but this was a reference, not to the demand requirement of Rule 23.1, but to a proposed provision that a suing shareholder must own a specified percentage of stock or represent a stated amount of the investment fund's assets.

3. Lastly, plaintiff invokes the short one-year limitation period on damages [13] as sufficient reason for exempting § 36(b) cases from the demand provision of Rule 23.1—the time taken by demand-and-response before institution of an action would, it is argued, diminish the period and the amount of recovery. The truth is, however, that ordinarily the demand requirement could change the particular one-year period for which recovery was allowable but would not reduce the one-year recovery period, and probably not decrease the amount. In the unusual case in which the amount of recovery could actually be reduced by directors' dawdling or the taking of excessive time to reply to a demand, a district court could allow suit to go forward without awaiting a response. *See Mills v. Esmark, Inc.,* 91 F.R.D. 70, 73 (N.D.Ill.1981).

▉ *C.* The residue of our discussion (to this point) is that there is no strong reason for wholly excluding section 36(b) from the demand requirement, or for thinking that Congress intended that result. In subpart A, *supra,* we have rejected some of plaintiff's contentions outright, and in subpart B we have found that each of his more substantial points has a fair and equivalent counterpoise. The decisive factor, we must conclude, is that there is no persuasive indication that, in adopting section 36(b), Congress wished to repeal or limit the demand provision of Rule 23.1 which has long been a general part of our federal law of practice and procedure, governing almost all derivative actions in federal courts.

In the absence of a "clear inconsistency" or a demonstrated congressional purpose to

---

**13.** Section 36(b)(3) (note 6, *supra*) provides: "No award of damages shall be recoverable for any period prior to one year before the action was instituted."

exclude one or more of the Federal Rules, "a subsequently enacted statute should be so construed as to harmonize with the Federal Rules if that is at all feasible." 7 Moore's Federal Practice, ¶ 86.04[4] at 86–22 (2d ed. 1980); *United States v. Gustin-Bacon Division, Certain-Teed Products Corp.*, 426 F.2d 539, 542 (10th Cir.), *cert. denied*, 400 U.S. 832, 91 S.Ct. 63, 27 L.Ed.2d 63 (1970); *see also*, 4 C. Wright & A. Miller, Federal Practice & Procedure, § 1001 at 30–31 (1969 ed.).[14] That harmonization is quite feasible for section 36(b). Perhaps for such actions the demand requirement of Rule 23.1 may tend toward the status of a legal vermiform appendix—the provision's utility may be reduced sharply in § 36(b) litigation—but the demand requirement still has a function to perform and is not totally without purpose or effect. In those circumstances it is not for the courts to hold inapplicable the demand requirement "which continues a long tradition in the federal courts," *Heit v. Baird*, 567 F.2d 1157, 1160 (1st Cir. 1977), where Congress has not done so, explicitly or by solid implication.[15]

## II

If, as we have held in Part I, *supra*, a § 36(b) action is not exempt from the demand portion of Rule 23.1, we must confront Grossman's secondary argument that, in any event, he was excused (as to the 36(b) portion of his suit) from making demand. He takes a parallel position for the "recapture" part of his action (which is not brought under § 36(b) and as to which plaintiff makes no claim of a complete exemption from the Rule). Rule 23.1 mandates that the complaint "shall also allege with particularity the efforts, if any, made by plaintiff to obtain the action he desires from the directors * * * and the reasons for his failure to obtain the action or for not making the effort." In this circuit that requirement has been "vigorously enforced." *Heit v. Baird, supra*, 567 F.2d at 1160. "The futility of making the demand required by Rule 23.1 must be gauged at the time the derivative action is commenced, not afterward with the benefit of hindsight." *Cramer v. General Telephone & Electronics Corp.*, 582 F.2d 259, 276 (3d Cir. 1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979).

■ 1. On the advisory fees (the § 36(b) claim), plaintiff's only excuses are that the Fund's directors were controlled by or affiliated with FMR, had participated in the alleged wrong, and had announced their opposition to the suit. All three reasons are inadequate. Of the eight Fund director-defendants, only three were affiliated with FMR; five were unaffiliated and "disinterested."[16] As the court said in *Untermeyer v. Fidelity Daily Income Trust*, 580 F.2d 22, 23 (1st Cir. 1978), and *In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 264 (1st

**14.** Compare this principle with the canon against implied repeals of statutes in the absence of clear intention to do so or repugnancy of the later to the earlier legislation. *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974); *Georgia v. Pennsylvania R. R.*, 324 U.S. 439, 456–57, 65 S.Ct. 716, 725–726, 89 L.Ed. 1051 (1945).

**15.** In *General Telephone Co. v. EEOC*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), the Supreme Court ruled—on the basis of a "straightforward" reading of § 706 of the Civil Rights Act of 1964, the legislative intent underlying the 1972 amendments to Title VII, and the enforcement procedures under Title VII—that the EEOC's enforcement action was not properly characterized as a "class action" subject to the procedural requirements of Rule 23. As we have said, comparable factors are absent here.

In addition to the court below, three district courts have passed directly on the applicability of the demand requirement of Rule 23.1 to suits under section 36(b). Two have held Rule 23.1 applicable. *Markowitz v. Brody*, 90 F.R.D. 542, 548–49, 554–55, 559–61 (S.D.N.Y.1981); *Weiss v. Temporary Investment Fund, Inc.*, 516 F.Supp. 665, 668–70 (D.Del.1981), *rehearing denied*, 520 F.Supp. 1098 (1981). One court held primarily that demand was futile in that instance and therefore excused under Rule 23.1, but was also "inclined to agree with plaintiffs that a demand on the directors of the Fund was not intended to be a prerequisite to suit under § 36(b)." *Blatt v. Dean Witter Reynolds Intercapital, Inc.*, S.D.N.Y., 528 F.Supp. 1152 (1982).

**16.** One disinterested director (who was apparently such at the time suit was begun) was not sued.

Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973), a majority of disinterested directors negatives general allegations of control-by-the-adviser, comparable to those plaintiff makes here. A proper excuse of control or domination calls for particularized allegations and specific facts—which are absent both in the initial and the amended complaint.

As for mere "participation" or "acquiescence" by the directors in the level of the challenged advisory fees, that generality, too, is an insufficient excuse where the corporate activity is the normal one of setting and paying advisory fees; on this point, there also are no particulars asserting that a majority of the directors engaged in a "facially improper transaction." Bare allegations of "wrongful participation" or "acquiescence" are not enough in this circuit. *See In re Kauffman Mutual Fund Actions, supra,* 479 F.2d at 264–65; *Heit v. Baird, supra,* 567 F.2d at 1160–62.

The third allegation, that the directors had already announced their firm opposition to the suit, is equally unavailing. Apart from the critical fact that the statement on which plaintiff relies in his amended complaint did not precede the suit but was part of a motion to dismiss the initial complaint, there is no doubt whatever that, in context, the disinterested directors' position did not preclude their fair consideration of plaintiff's demand.[17]

■ 2. The primary excuse for failing to make demand on the "recapture" element of the case is that the directors all had a conflict of interest.[18] The gist of this claim is that FMR should have recovered a substantial portion of underwriting commissions, discounts and spreads paid on the Fund's purchases of municipal bonds, but failed to do so "because FMR received from the underwriters substantial benefits in the form of research, statistical and other information in connection with FMR's functions as investment adviser *to the other funds which it manages*" (emphasis added). The posited conflict-of-interest arises because all the Fund's directors are directors or trustees of other funds managed by FMR, and as such directors or trustees (it is asserted) would have an interest adverse to recapture for the Fund, so that the other funds could continue to receive the information they need and want.

We can assume *arguendo* that there might arguably be some duty to recapture as charged in the complaint, but the difficulty with plaintiff's general assumption of "conflict of interest," as an excuse for not making demand, is that he fails to set forth with any specificity, as Rule 23.1 and our decisions require, the factual grounds why this putative "conflict of interest" was in fact an actual one. The conflicting status of the Fund's directors here was at best tenuous and conditional, not direct, stark, apparent and "unmistakable" as in *Delaware & Hudson Co. v. Albany & Susquehanna Railroad,* 213 U.S. 435, 29 S.Ct. 540, 53 L.Ed. 862 (1909). The responsibility both for supplying the information to the other funds and for recapture was, not on the other funds, but on FMR, with which a majority of the Fund's board were unconnected. The same is true of the financial detriment of recapture, which would fall on FMR; the other funds would not be interested in that money. They may be concerned with continuing to receive the information,[19] but there is no allegation or reason to believe that they would not be satis-

---

**17.** The full statement was: "The Disinterested Directors have no basis for believing that suit against FMR for the practices alleged in the Complaint is justified. They are anxious, however, to evaluate any information which Grossman has which suggests that it is. If they conclude that suit is justified, the Fund's best interests demand that they bring suit. They will do so."

As ground for his excuse, Grossman quotes only the first sentence, omitting the remainder.

**18.** Plaintiff also says, on this phase, that the directors had announced their firm opposition to the merits of his recapture claim. On that, the answer we have already given (*see* note 17, *supra,* and text) suffices.

**19.** There are, however, no particularized allegations on the necessity or importance of the other funds' continuing to receive the information.

fied if FMR obtained it elsewhere than from underwriters, brokers or dealers. Although there is an allegation that recapture would diminish the amount of information supplied by the latter, there is no assertion that FMR (which had the duty to supply it) would not be able to, or would not, fill the gap from another source, nor is there any assertion that the other funds would have to pay FMR higher fees in order to obtain the information they wanted. To charge a true conflict of interest the plaintiff should have at least spelled out the likelihood of one, not left the court with the bare possibility that the defendants might conceivably have the incentive to vote or push against recapture because of their interests as directors of the other funds. *Heit v. Baird, supra*, 567 F.2d at 1161–62, indicates that the bare possibility or mere allegation that the directors could have a self-interested purpose (there, to retain control of the corporation; here, to advance the interests of the other funds) is not enough if, as in this case, there can be valid corporate reasons for taking the position challenged in the complaint—or if there is in fact no conflict because of other circumstances not negated by plaintiff. Conversely, "the antagonism between the directory and the corporate interest" must be shown to be "unmistakable," or deemed futile, to excuse demand. *Delaware & Hudson Co. v. Albany & Susquehanna Railroad*, 213 U.S. 435, 447, 29 S.Ct. 540, 543, 53 L.Ed. 862 (1909); *In re Kauffman Mutual Fund Actions, supra*, 479 F.2d at 263.

### III

The final question is whether plaintiff's post-litigation demand cured his failure to make one before beginning the action. Rule 23.1 specifically calls upon the complaint to show that demand was made or was properly excused; there is no provision for thereafter remedying an omission in the same suit, especially after the defendants have moved to dismiss because of the absence of a demand. The terms of the Rule have generally been followed by other appellate courts. *Lucking v. Delano*, 117 F.2d 159, 160 (6th Cir. 1941) ("Obviously the filing of the complaint cannot be regarded as a demand to sue, for by starting the action [plaintiffs] have usurped the field"); *Shlensky v. Dorsey*, 574 F.2d 131, 141–42 (3rd Cir. 1978) ("The contemplated showing of demand made upon the directors after the filing of the shareholders' derivative complaints could not have satisfied the demand requirements of the rule"); *Galef v. Alexander*, 615 F.2d 51, 59 (2d Cir. 1980) ("Rule 23.1 * * * is essentially a requirement that a stockholder exhaust his intracorporate remedies before bringing a derivative action").

Though this court has not yet ruled squarely on the precise point, it has observed that the role of demand is to alert the director before suit is instituted. *In re Kauffman Mutual Fund Actions, supra*, 479 F.2d at 263, we said that "to be allowed, sua sponte, to place himself in charge without *first* affording the directors the opportunity to occupy their normal status, a stockholder must show that his case is exceptional," *i.e.* that demand is excused (emphasis added). The same postulate was expressed in *Heit v. Baird, supra*, 567 F.2d at 1162 (n.6): "The purpose of the demand requirement is, of course, to require resort to the body legally charged with conduct of the company's affairs *before* licensing suit in the company's name by persons not so charged" (emphasis added). Under this court's practice of vigorous enforcement of the Rule (*Heit v. Baird*, 567 F.2d at 1160; *see also In re Kauffman Mutual Fund Actions*, 479 F.2d at 263, 267), and of the generally "strict view" the court takes "of the requirement of prior demand" (*Untermeyer v. Fidelity Daily Income Trust*, 580 F.2d 22, 23 (1st Cir. 1978)), these statements should be, and are, now embodied in an explicit holding.

It makes no difference that in this instance the belated demand was made at the suggestion of the District Court. The judge's colloquy with counsel shows that the court was simply making that suggestion, as the opinion below says, "in the hope that expensive and lengthy litigation could be avoided"; if the directors responded favorably to plaintiff, in whole or in part,

that would clearly be the result. Grossman then made his demand voluntarily, with his expressed understanding "that the demand letter would not be deemed a waiver by any party of rights which it otherwise possessed." There was no direction by the court and no agreement that the late demand would rectify the initial failure to make a demand prior to suit.

### IV

Because we hold that the suit must be dismissed because plaintiff did not make the necessary demand before suing, we refrain from considering the District Court's alternative holding that, in any event, defendants are entitled to judgment on the ground that their "alleged actions are protected by and comply with the requirements of the business judgment rules."

*Affirmed.*

United States Court of Appeals,
First Circuit.