Harry LEWIS, Derivatively on Behalf of NATIONAL SEMICONDUCTOR CORPORATION, a Delaware corporation, Plaintiff,

v.

Charles E. SPORCK, Peter J. Sprague, Donald E. Weeden, Robert Beshar, Harry H. Wetzel, Neil Goldschmidt, John R. Finch, Pierre R. Lamond, F. Joseph Van Poppelen, Charles C. Cushing, Robert Berryman, Walter R. Conway, Frank Traenkle, Clements E. Pausa, Robert Mollerstuen, August Pfaehler, Gerard P. Legere, Alvon L. Telford, Thomas S. Griffiths, E. Floyd Kvamme, David N. Martin, David Turner, William Cox, James Doodey, J. Philip Russell, Patrick Verderico, E. Joseph Willits, and National Semiconductor Corporation, a Delaware corporation, Defendants.

No. C-84-20343-WAI.

United States District Court, N.D. California.

Oct. 30, 1986.

William S. Lerach, Milberg, Weiss, Bershad, Specthrie & Lerach, San Diego, Cal., Joseph W. Cotchett, Cotchett & Illston, Burlingame, Cal., for plaintiff.

Seymour Kurland, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., Richard Haas, Lasky, Haas, Cohler & Munter, P.C., San Francisco, Cal., for defendants.

## ORDER

INGRAM, District Judge.

Defendants' motion to dismiss the first amended complaint pursuant to Fed.R. Civ.P. 12(b)(6) came on regularly for hearing on January 31, 1986. The court has reviewed the extensive briefs submitted by the parties. Based upon a review of the applicable authorities and the procedural posture of this case, the court hereby DENIES defendants' motion to dismiss premised upon plaintiff's alleged failure to comply with the demand requirements of Fed. R.Civ.P. 23.1. The court finds that the April 19, 1985 demand on the National Semiconductor Corporation board of directors (NSC board) regarding the "trade secret theft" incident complies with this court's earlier order to replead "in conformance with Rule 23.1." Order at 3.

Defendants' Rule 12(b)(6) motion to dismiss the RICO claim (18 U.S.C. § 1962) is also DENIED. The court finds that the first amended complaint adequately pleads a RICO claim against defendants based on the alleged testing fraud. The court makes no ruling at this time as to whether the "trade secret" theft allegations state a RICO claim.

The first amended complaint, however, is DISMISSED WITH LEAVE TO AMEND to allege the denial by the NSC board of the April 19, 1986 demand. Plaintiff is further GRANTED LEAVE TO AMEND to plead facts indicating why the refusal of the NSC board to litigate the testing fraud and "trade secret" theft claims is "wrongful." *Allison, On Behalf of General Motors Corporation v. General Motors Corporation*, 604 F.Supp. 1106, 1120 (D.Del.), *aff'd mem.*, 782 F.2d 1026 (3rd Cir.1985). Plaintiff is given ninety (90) days from the date of this order in which to file a second amended complaint.

## I. INTRODUCTION

The facts of this case are set out in this court's earlier order. Briefly, this shareholder derivative action is brought against

the individual NSC board members.[1] Various NSC management personnel and accounting/financial officers are also named.[2] The suit centers around two (2) events: (1) the use of the United States mails to send falsified testing data to the government regarding microcircuits sold by NSC to the government and (2) the theft of "trade secrets" from International Business Machines Corporation (IBM) which resulted in NSC paying three (3) million dollars to settle the subsequent civil suit brought by IBM.

This court sustained with leave to amend defendants' initial Rule 12(b)(6) motion to dismiss. Specifically, this court found:

1. Plaintiff had not made a demand on the NSC board regarding the "trade secret" theft incident;

2. Plaintiff did not adequately allege "futility" so as to be excused from making the above mentioned demand on the NSC board;

3. Plaintiff's allegations of "fraud" as the RICO predicate act were not pled with the "particularity" required by Fed. R.Civ.P. 9(b);

4. No private right of action existed under § 13(b)(2) of the Exchange Act, 15 U.S.C. § 78m(b)(2) and the rules promulgated thereunder by the Securities Exchange Commission.

Shortly after the court issued its order, plaintiff made a demand on the NSC board to bring suit based on the "trade secret" theft incident. This demand was made by letter dated April 19, 1985. By letter dated July 12, 1985, plaintiff was informed by the NSC board that the investigation regarding whether to bring suit had not yet begun. The NSC board estimated that the investigation would be concluded in approximately ninety (90) days. Plaintiff filed this first amended complaint on July 25, 1985. The NSC board, by letter dated February 28, 1986, formally rejected plaintiff's demand to sue.

The task now before this court is to determine to what extent plaintiff's first amended complaint corrects the deficiencies noted in this court's earlier order. Plaintiff has not realleged a § 13 count and hence that issue is not before the court. Nor have defendants challenged the suit as premature on the grounds that no formal rejection of plaintiff's December 22, 1982 demand to sue regarding the "testing fraud" incident was ever made. Since over three (3) years have passed without a response by the NSC board to that December 1982 demand, the court considers that demand rejected. *See Grossman v. Johnson,* 674 F.2d 115, 122 (1st Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982) (where board takes excessive time to reply to demand, court may allow suit to go forward without awaiting a response); *see also Mills v. Esmark, Inc.,* 91 F.R.D. 70 (N.D.Ill.1981).

## II. ADEQUACY OF APRIL 19, 1985 "TRADE SECRET" THEFT DEMAND ON NSC BOARD

### A. *Timeliness of Demand*

Plaintiff's demand on the NSC board concerning the "trade secret" theft incident was made approximately eleven (11) months after the instant derivative action was filed. Defendants assert that such a belated demand does not comply with Rule 23.1[3] and therefore dismissal of the "trade

---

1. The NSC board members are: Sporck, Sprague, Weeden, Beshar, Wetzel, and Goldschmidt. First amended complaint, ¶ 8(a)–(f).

2. The NSC management personnel are: Finch, Lamond, Van Poppolen, Cushing, Berryman, Conway, Traenkle, Pausa (also alleged executive officer), Mollerstuen, Pfaehler, Legere, Telford, Griffiths, Kvamme, Martin, Turner, Cox, and Doodey. *Id.* at ¶ 9(a)–(r). These defendants are hereinafter collectively referred to as the "testing data employee defendants." The court notes that defendants Pausa, Mollerstuen, Pfaehler,

Legere, Telford, and Griffiths were not named in the initial complaint.

The NSC accounting/financial officers are: Russel (vice president, controller and chief accounting officer), Verderico (controller and chief accounting officer), and Willits (vice president, finance and secretary, chief financial officer). *Id.* at ¶ 10(a)–(c).

3. Fed.R.Civ.P. 23.1 states in pertinent part:

"The complaint shall also allege with particularity the efforts, if any, made by plaintiff to

secret" theft portion of the complaint is required. Defendants rely on the following cases in support of this argument: *Schlensky v. Dorsey*, 574 F.2d 131 (3rd Cir.1978); *Weiss v. Temporary Investment Fund Inc.*, 692 F.2d 928 (3rd Cir.1982), *vacated on other grounds*, 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 224 (1984), *on remand*, 730 F.2d 939 (3rd Cir.1984); *Smachlo v. Birkelo*, 576 F.Supp. 1439 (D.Del. 1983); and *Grossman*, 674 F.2d at 115. While recognizing the general proposition for which these cases stand, this court finds that this line of authority does not compel the result urged by defendants.

These First and Third Circuit decisions all involve the dismissal of a purported shareholder derivative suit where a demand on the board was not made *before* suit was filed. The trial courts dismissed the complaints on this ground—and were affirmed by the respective circuit courts. The circuit courts recognized that the district courts had acted within their discretion in finding that Rule 23.1 had not been complied with. *See e.g., Shlensky*, 574 F.2d at 141 (3rd Cir.); *Weiss*, 692 F.2d at 943 (3rd Cir.); *Grossman*, 674 F.2d at 125–26 (1st Cir.).

██ None of these decisions, however, found that a district court *abused its discretion* by allowing a suit to proceed following a belated demand on the board of directors. These decisions, in fact, can be read as simply reaffirming the significant discretion a district court has when determining whether the requirements of Rule 23.1 have been met.

The decisions relied upon by defendants are further distinguishable. None of these decisions involved the dismissal of the suit *where the board had acted on the belated demand.* This is the instant case. Dismissing the complaint where the board has acted on the demand would elevate form over substance. In short, Rule 23.1 has been complied with: the NSC board has been given the opportunity to sue on the "trade secret" theft claim and has declined to do so. Allowing this suit to proceed is consistent with the purpose of Rule 23.1 and the common sense realities of this case.

Furthermore, district courts in the following cases allowed shareholder derivative suits to proceed after a belated demand on the board of directors: *Brody v. Chemical Bank*, 482 F.2d 1111, 1114 (2nd Cir.1973), *on remand*, 66 F.R.D. 87, 90 (S.D.N.Y.1974); *Siegal v. Merrick*, 84 F.R.D. 106, 110 (S.D.N.Y.1979); *Markowitz v. Brody*, 90 F.R.D. 542, 563 (S.D.N.Y. 1981); and *Stein v. Bailey*, 531 F.Supp. 684 (S.D.N.Y.1982). This court finds these decisions authority for allowing the instant action to proceed after the belated demand on the NSC board.

For the foregoing reasons, the court finds the April 19, 1985 demand complies with this court's earlier order to replead "in conformance with Rule 23.1." [4] This decision makes it unnecessary to decide whether the first amended complaint adequately pleads the "futility" of making a demand on the NSC board.

### B. *Contents of April 19, 1985 Demand on NSC Board*

██ The court in *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1209 (9th Cir. 1980), stated the standard for determining whether the contents of a demand complied with Rule 23.1:

"The sufficiency analysis under Rule 23.1 looks to the sufficiency of the content of the demand and the sufficiency of

---

obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort."

**4.** Defendants, at p. 14 n. 10, of their memorandum, assert that the prior order allowed plaintiff leave to amend *only* to reallege "futility." The prior order states at p. 3 that plaintiff is allowed leave to plead "in conformance with Rule 23.1." The order is ambiguous as to whether plaintiff is granted leave to plead "futility" *or* a belated demand on the NSC board. This court cannot now dismiss plaintiff's first amended complaint on the grounds that plaintiff pursued one course (pleading a belated demand), rather than the other (repleading futility).

the authority of those to whom the demand is presented."

The demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief. *Allison,* 604 F.Supp. at 1106. Defendants contend that the April 19, 1985 demand fails to meet this standard.

■ Upon review of the April 19, 1985 demand, this court concludes that the demand provided the NSC board with the information necessary for the board to act upon the demand. *Allison,* 604 F.Supp. at 1117. The demand adequately identifies the wrongdoers by referring to the complaint. Under the circumstances of this case, the court find this procedure adequate to inform the NSC board. *Id.* Furthermore, the NSC board apparently found the demand sufficiently informative—in that the demand was ultimately rejected following an investigation of the charges contained therein.

### C. *Filing of First Amended Complaint Prior to Board Action on April 19, 1985 Demand*

The instant complaint was filed approximately three (3) months after the April 19, 1985 demand on the NSC board. Defendants assert that the instant complaint is premature because it was filed before the NSC board acted upon the demand. Defendants conclude that the NSC board was not given enough time to investigate and decide whether to institute suit as requested by the demand letter. The court finds this argument unpersuasive.

■ The amount of time needed for a board's response will vary in direct proportion to the complexity of the technological, quantitative, and legal issues raised by the demand. *Allison,* 604 F.Supp. at 1117–18. Here, NSC's involvement in the "trade secret" thefts was public knowledge in 1982. These thefts were the topic of a government investigation in 1982, and a subsequent three (3) million dollar settlement by NSC of the trade secret misappropriation suit brought by IBM. In view of the NSC

board's knowledge of the "trade secret" thefts for approximately three (3) years preceding the demand, this court concludes that the plaintiff properly filed the first amended complaint without waiting for the results of the investigation.

This conclusion is supported by two points. First, the July 12, 1985 letter from the NSC board to plaintiff indicated that the investigation *had not yet even begun. See Mills v. Esmark, Inc.,* 91 F.R.D. 70 (N.D.Ill.1981) (inference that waiting for response to demand is futile where board of directors does not respond within three (3) months of demand). Second, the NSC board ultimately denied the demand. As discussed *supra,* the court declines to elevate form over substance where the purpose of the Rule 23.1 demand requirement has been served.

### III. LEAVE TO AMEND COMPLAINT TO ALLEGE WRONGFUL DENIAL OF BOTH THE TESTING FRAUD AND "TRADE SECRET" THEFT DEMANDS

Plaintiff is GRANTED LEAVE TO AMEND to plead the denial of the December 22, 1982 and April 17, 1985 demands. As discussed *supra,* the court considers the December 22, 1982 demand constructively denied based upon the NSC board's failure to respond to the demand over the last three and one-half years. *Mills,* 91 F.R.D. at 73; *see also generally Grossman,* 674 F.2d at 122.

Plaintiff is further GRANTED LEAVE TO AMEND to plead facts indicating why the denial of both demands by the NSC board was "wrongful." *Allison,* 604 F.Supp. at 1120 ("Plaintiff must allege with particularity that the Board was either tainted by self-interest, acted in bad faith or fraudulently, or, in certain contexts, through gross negligence failed to reach an informed decision. [citations omitted].")

### IV. RICO CLAIM: TESTING FRAUD ALLEGATIONS

#### A. *Introduction*

This court's prior order identified various pleading deficiencies with count I of the

complaint, the purported RICO claim. Those problems were:

1. The specific sections of RICO allegedly violated were not alleged;

2. The involvement of the different groups of defendants were not alleged with precision;

3. Allegations of "causation" were not specific;

4. The alleged members of the conspiracy were not adequately notified as to how they joined the conspiracy.

Order, at 14, 15, 15–16, and 16, respectively. Whether these deficiencies have been corrected in plaintiff's first amended complaint is the issue now before the court.

Defendant's motion to dismiss also challenges the allegation of a "pattern" in the RICO count. The court did not address this issue in its prior order.

### B. *Requirements For Pleading a RICO Count*

This court did not have the benefit of the Supreme Court's decision in *Sedima, S.P. R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), when ruling on defendants' earlier motion to dismiss. In *Sedima*, the Court identified the allegations necessary to state a RICO cause of action. Those allegations are: "(1) conduct (2) of an enterprise (3) through a pattern [n. 14 omitted] (4) of racketeering activity". 473 U.S. at —–—, 105 S.Ct. at 3284–85, 87 L.Ed.2d at 358–59. Each of these elements must be alleged in order to state a claim. *Id.* With those elements in mind, the specific pleading problems identified in this court's prior order will be addressed.

### C. *Pleading Specific Subsections of RICO*

Plaintiff alleges in ¶ 107 of the first amended complaint that § 1962(c) and (d) have been violated. Plaintiff has complied with the earlier order in this respect.

### D. *Pleading Specific Involvement of Each Group of Defendants*

#### 1. *Director Defendants*

The director defendants are identified in ¶ 8(a)–(f) of the first amended complaint. Paragraphs 33 and 34(b) make specific allegations of the defendants' knowledge of the use of the United States mails to send falsified testing data to the government. Such allegations of knowledge are sufficient to state a mail fraud count against these directors. *See generally United States v. Beecroft*, 608 F.2d 753, 759 (9th Cir.1979) (mail fraud conviction of corporate officer affirmed where officer had knowledge of scheme and authority to prevent dissemination of misrepresentations). Defendants assert that the first amended complaint alleges only the status of these defendants as directors—rather than the specific involvement of each defendant in the underlying acts. Plaintiff replies by arguing that the specific involvement of the individual directors, and in particular defendant Spork, is pled at ¶¶ 30, 48, and 58.

■ Upon review of the first amended complaint, the court finds the directors' involvement in the testing fraud adequately pled under Fed.R.Civ.P. 9(b). As noted in this court's earlier order, pleading group conduct may in some cases meet Rule 9(b) requirements. *In re Equity Funding Corp. of America Securities Litigation*, 416 F.Supp. 161, 181 (C.D.Cal.1976). Furthermore, the allegations of the defendants' status as directors can be circumstantial evidence of these defendants' knowledge of NSC's testing fraud scheme. *See generally United States v. Farris*, 614 F.2d 634, 639 (9th Cir.1979), *cert. denied*, 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980); *see also Beecroft*, 608 F.2d at 759. Finally, specific allegations of the director defendants' knowledge of the testing fraud are made. *E.g.*, ¶ 33(a) (directors knew that microcircuits were not being properly tested because profit margins on microcircuits were substantially higher in the absence of the required testing); ¶ 33(b) (directors knew that microcircuits

were not being properly tested because rejection rate for improperly tested microcircuits was lower than expected); ¶ 33(c) (directors knew that microcircuits were not being properly tested because NSC did not have the necessary testing equipment). The complaint, when read as a whole, adequately alleges the director defendants' involvement in the testing fraud.

2. *Testing Data Employee Defendants*

■ The testing data employee defendants are identified at ¶ 9(a)–(r). These defendants were employed in various management positions with NSC. The court finds the allegations of these defendants' involvement in the testing fraud scheme sufficient to allege the RICO predicate act of mail fraud. Contrary to defendants' assertions, the court does not find that certain defendants were "randomly selected" as the "cause" of certain mailings of fraudulent test results. Certain testing data employees are not alleged to be involved with certain mailings because these defendants had already "severed their relationship with" NSC. *See* Plaintiff's Memorandum, at 39. Although specific allegations as to when each employee was employed at NSC would be preferable, the complaint as pled adequately alleges the involvement of these defendants in the testing fraud scheme.

3. *Accounting/Financial
Officer Defendants*

■ The accounting/financial officer defendants are identified at ¶ 10(a)–(c). The court finds that under the circumstances of this case, the positions of these defendants in the corporation is circumstantial evidence of their knowledge of the testing fraud scheme. *See supra,* at pp. 579–80. Furthermore, ¶ 33(a) alleges that the profits realized from the sale of improperly tested microcircuits were "substantially

higher" than the profits from the properly tested microcircuits. As "chief accounting/financial officers," these defendants allegedly had access to this information. The complaint, when read as a whole, adequately alleges these defendants' involvement in the testing fraud scheme.

E. *Pleading "Causation"*

The court has found that the first amended complaint adequately pleads the knowledge of and participation in the testing fraud scheme by each defendant group. It is not necessary to plead that each defendant personally mailed the fraudulent test results in order to properly allege "causation." *Farris,* 614 F.2d at 639. Allegations that each defendant was a "knowing participant" are sufficient. *Id.* Allegations that the misrepresentations were "expressly or impliedly authorized or ratified" by corporate management are sufficient. *See generally United States v. Gibson,* 690 F.2d 697, 701 (9th Cir.1982), *cert. denied,* 460 U.S. 1046, 103 S.Ct. 1446, 75 L.Ed.2d 801 (1983). The first amended complaint, when read as a whole, meets this burden. *See e.g.* ¶ 39 ("Defendants Telford and Mollerstuen with knowledge of defendants Spork and Pausa and other senior management, ordered employees under their supervision to falsify the testing data for the May 1, 1978 to April 30, 1979 Quality Conformance Report.")

F. *Pleading "Conspiracy"*

The court's prior order allowed plaintiff LEAVE TO AMEND to plead facts sufficient to put the defendants on notice as to how each of them joined the conspiracy. The complaint adequately pleads the knowledge of and participation in the testing fraud scheme by each defendant. Defendants are adequately informed of the conduct giving rise to this alleged "knowledge and participation." [5] This is all that is re-

---

5. Each group of defendants is informed of the facts which allegedly establish their "knowledge and participation" in the testing fraud scheme. Negating the existence of those facts would allow defendants to prevail at the summary judg-

ment or trial stage. For example, proof by the accounting/financial officer defendants that the financial reports did not show higher profits for the improperly tested microcircuits would go towards negating the inference that these de-

quired at the pleading stage. *Bosse v. Crowell, Collier and MacMillan*, 565 F.2d 602, 611 (9th Cir.1977) (allegations of fraud must be specific so as to allow defendants to prepare an adequate answer).

### G. *Pleading "Pattern"*

■ Defendants challenge the "pattern" allegations on two (2) grounds. First, defendants rely on an Illinois decision for the proposition that the individual acts of mail fraud are simply a "single fraudulent effort" and hence not a "pattern" pursuant to RICO. *See National Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* 615 F.Supp. 828 (N.D.Ill.1985).[6] Second, defendants argue that the mail fraud and trade secret theft allegations are "merely isolated events" and hence not a "pattern" pursuant to RICO. Defendants urge this court to require a RICO plaintiff to steer a very narrow course between these two (2) extremes.[7] Such a limitation of the "pattern" element is supported by neither *Sedima* nor applicable circuit authority. This court accordingly declines to impose such restrictions.

The *Sedima* court, in dicta at 358–59 n. 14, identifies the following limitations on the "pattern" element:

"1. The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. 2. The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more

than one 'racketeering activity' and the threat of continuing activity to be effective. It is this *continuity plus relationship* which combines to produce a pattern." [Quoting S Rep No. 91–617, p. 158 (1969); emphasis by Court]

3. [C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. 18 U.S.C. § 3575(e)."

Here, the component acts of the mail fraud scheme are sufficient to plead a "pattern." Each mailing of fraudulent testing results was allegedly done in furtherance of the "same or similar purpose." *Sedima,* 473 U.S. at —— —— n. 14, 105 S.Ct. at 3285–86 n. 14, 87 L.Ed.2d at 358–59 n. 14. This purpose was allegedly to defraud the government and increase NSC's profitability. A finding by this court that such pleading is sufficient to allege the "pattern" element of a RICO claim is consistent with the following decisions: *Illinois Department of Revenue v. Phillips*, 771 F.2d 312, 313 (7th Cir.1985) (each mailing in a scheme to defraud is a separate offense so that several separate acts of mail fraud constitute a "pattern of racketeering activity"); *Alexander Grant & Co. v. Tiffany Industries, Inc.,* 770 F.2d 717 (8th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 799, 88 L.Ed.2d 776 (1986) (thirty acts of mail and wire fraud in connection with a single audit

---

fendants had knowledge of the fraudulent testing scheme.

**6.** Judge Shadur's *Inryco* decision has been cited with approval in two decisions by Judge Rymer of the Central District. In *Allington v. Carpenter,* 619 F.Supp. 474, 478 (C.D.Cal.1985), Judge Rymer found that three (3) wire fraud acts "comprise[d] a single criminal episode" to defraud real estate investors and hence did not constitute a "pattern of racketeering activity" actionable under RICO. In *Medallion T.V. Enterprises v. SelecTV of California, Inc.,* 627 F.Supp. 1290, 1297 (C.D.Cal.1986), Judge Rymer found that the use of the mails and wires over a two month period "constitute[d] a single criminal episode" to defraud plaintiff in connection with a broadcasting joint venture and hence did

not constitute a "pattern of racketeering activity" actionable under RICO.

**7.** To borrow an analogy favored by the United States Supreme Court, *see Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974), defendants' theory would force plaintiff to steer between the Scylla of pleading multiple "fraudulent efforts" and the Charybdis of pleading "related, non-isolated" criminal acts. This problem was recognized by Judge Getzendanner in *Heritage Insurance Co. v. First National Bank of Cicero,* 629 F.Supp. 1412, 1416 (N.D.Ill.1986) ("[RICO] requirement that criminal acts be 'related' as well as 'continuous' would be [rendered] meaningless, since relationship in most circumstances would vitiate a finding of continuity.")

constitutes a "pattern of racketeering activity"); · *Graham v. Slaughter,* 624 F.Supp. 222 (N.D.Ill.1985) (two year practice of embezzling through separate mail and wire fraud transactions constitutes a "pattern of racketeering activity," notwithstanding fact that numerous acts arguably comprise a single criminal scheme); and *U.S. v. Brooklier,* 685 F.2d 1208, 1217 (9th Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983) (each payment resulting from defendant's extortion scheme is a separate act of racketeering so that several separate acts of extortion payment constitute a "pattern" of racketeering activity); *but see Superior Oil Co. v. Fulmer,* 785 F.2d 252 (8th Cir.1986) (no "pattern" found where "several" related acts of mail and wire fraud are part of "one isolated fraudulent scheme" to convert gas from pipeline).

To the extent that the *Inryco* decision relied upon by defendants requires a showing of "multiple fraudulent schemes," this court joins the following courts in rejection of such a requirement. *Trak Microcomputer Corp. v. Wearne Brothers,* 628 F.Supp. 1089, 1096 (N.D.Ill.1985) ("[T]his court does not agree with the suggestion [in *Inryco* ] that a 'pattern of racketeering activity' cannot be established with respect to a single fraudulent scheme"); *Graham,* 624 F.Supp. at 225 ("Where this court differs with *Inryco* is in the implication that a single fraudulent effort or episode should be equated with a single scheme"); *Bush Development Corp. v. Harbour Place Associates,* 632 F.Supp. 1359, 1364–65 (E.D. Va.1986) (The Court is unwilling, however, to restrict the scope of civil RICO in the manner suggested [by *Inryco* ]); *see also Heritage Insurance Co. v. First National Bank of Cicero,* 629 F.Supp. 1412, 1416 (N.D.Ill.1986).

The court finds that allegations of individual mailings of fraudulent testing data over a period of three (3) years constitutes

a RICO "pattern." As noted in *Graham,* 624 F.Supp. at 225:

> "[T]he predicate acts alleged are not ministerial acts performed in the execution of a single fraudulent transaction, but appear to be independently motivated crimes. Under any reasonable definition of 'pattern,' the allegations of this complaint would suffice to state a claim under *Sedima.*"

This decision makes it unnecessary to address defendant's fall-back argument.[8]

## V. RICO CLAIM: "TRADE SECRET" THEFT ALLEGATIONS

Defendants' challenge to this claim was premised primarily upon plaintiff's failure to make a timely demand on the board as required by Rule 23.1. *See* Defendants' Memorandum, at 34–35 n. 15 (dismissal of "trade secret" theft allegations on Rule 23.1 grounds is "inevitable"). The court has found the demand complies with Rule 23.1. Defendant's only substantive challenge to this alleged RICO claim concerns the "pattern" allegation. *See* Defendants' Memorandum, at 57–58 n. 20.

In the interest of fairness, the court will allow the parties the opportunity to fully brief the issue of whether the "trade secret" theft allegations state a RICO claim. Defendants' papers shall be filed not more than fourteen (14) days from the date of filing of this order. Any opposition by plaintiff and subsequent reply by defendants shall be filed not more than twenty-eight (28) days and thirty-five (35) days, respectively, from the date of filing of this order. The matter will then be deemed submitted. This briefing schedule will allow the court to rule on the adequacy of the "trade secret" theft allegations before plaintiff is required to file his second amended complaint.

## VI. CONCLUSION

Based on the foregoing, plaintiff's first amended complaint is DISMISSED WITH

---

**8.** Defendants argue that the testing fraud and "trade secret" theft allegations are too "isolated and sporadic" to constitute a "pattern."

LEAVE TO AMEND consistent with this order.