**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KATHERINE G. POTTER; CHARLES B.
KRIEGER,

        *Plaintiffs-Appellants,*

        v.

B. WAYNE HUGHES; PUBLIC
STORAGE, INC., a California
corporation; B. WAYNE HUGHES,
Jr.; TAMARA HUGHES GUSTAVSON;
DANN V. ANGELOFF; MARVIN M.
LOTZ; HARVEY LENKIN; RONALD L.
HAVNER, Sr.; THOMAS J. BARRACK,
Jr.; ROBERT J. ABERNETHY; WILLIAM
C. BAKER; URI P. HARKHAM;
DANIEL C. STATON; JOHN T. EVANS;
JOHN REYES; DAVID GOLDBERG; A.
TIMOTHY SCOTT,

        *Defendants-Appellees.*

No. 06-56082

D.C. No.
CV-04-10607-GPS

OPINION

Appeal from the United States District Court
for the Central District of California
George P. Schiavelli, District Judge, Presiding

Argued and Submitted
March 4, 2008—Pasadena, California

Filed October 10, 2008

Before: J. Clifford Wallace, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Gould;
Dissent by Judge Ikuta

14395

## COUNSEL

Edward M. Gergosian and Robert J. Gralewski, Gergosian & Gralewski, LLP, San Diego, California, for the appellants.

David Dinielli and Shoshana Bannett, Munger, Tolles & Olson LLP, Los Angeles, California, for appellees B. Wayne Hughes, Jr., and Tamara Hughes Gustavson.

Richard B. Spector, Corbett, Steelman & Spector, Irvine, California, for appellees Dann V. Angeloff, Thomas J. Barrack, Jr., Robert J. Abernethy, William C. Baker, Uri P. Harkham, Daniel C. Staton, and John T. Evans.

John M. Potter and Scott G. Lawson, Quinn Emanuel Urquhart & Hedges LLP, San Francisco, California, for appellees Marvin M. Lotz, Harvey Lenkin, Ronald L. Havner, Jr., John Reyes, David Goldberg, A. Timothy Scott, and Public Storage, Inc.

## OPINION

GOULD, Circuit Judge:

In this shareholder's derivative action, Plaintiff-Appellant Katherine Potter ("Potter") alleges that the Defendants-Appellees (collectively, "Defendants"), who are managers and directors of Public Storage, Inc. ("PS"), wrongfully managed PS. The district court dismissed the action on the grounds that Potter failed to make an adequate demand on the Board of Directors of PS ("Board") before filing her suit. We affirm.

**I**

PS is a California corporation that is publicly traded on the New York Stock Exchange. Potter and Co-Plaintiff Charles Krieger ("Krieger") filed a derivative complaint against PS and sixteen individual defendants on December 30, 2004, alleging twelve causes of action including waste of corporate assets, breach of fiduciary duty, fraud, and violation of the Sarbanes-Oxley Act of 2002, 15 U.S.C. §§ 7201-7266. These allegations related to three alleged transactions: (1) PS's acquisition of an entity known as PSIC ("PSIC transaction"); (2) the use of PS resources to provide services to a Canadian business owned by the Hughes family, who are prominent members of the Board ("Canadian transaction"); and (3) PS's payment of management and advisory fees to entities owned by other defendants ("M&A transaction"). Upon Defendants' motion to dismiss, the district court dismissed the complaint with leave to amend, concluding that Krieger and Potter did

not satisfy the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and California law.[1]

Potter and Krieger filed an amended complaint on July 12, 2005, alleging the same twelve causes of action but this time relating them to only two transactions, the PSIC transaction and the Canadian transaction. Defendants once again moved to dismiss, and the district court dismissed the second complaint, concluding that Krieger failed the contemporaneous ownership requirement and that Potter failed to make an adequate demand on the Board.

Krieger does not appeal his dismissal, so this appeal concerns only the adequacy of Potter's demand on the Board. However, Krieger plays a major role in the facts leading to Potter's appeal. Krieger sent a demand letter to the Board on November 21, 2002. This letter complained of the PSIC transaction but did not discuss the Canadian transaction. It also did not mention Potter by name, but noted that "[t]wo individuals . . . who reside in Southern California where the lawsuit will be filed will join with me to bring the action." Potter alleges that she was one of the two unnamed individuals to whom Krieger was referring in the letter.

On January 6, 2003, Krieger and attorney Douglas Connon ("Connon") met with members of the special committee established by the Board to investigate the allegations in the November 21 letter. At the meeting, Connon told the members of the committee that he was representing Potter and that he had her power of attorney. In a series of later letters, dated

---

[1]Rule 23.1 imposes only a pleading requirement with regard to demand; the substantive demand requirement is an issue of state law. *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1463 n.10 (9th Cir. 1995). Because PS is a California corporation and the suit is in California, California law is applicable. However, the parties and this opinion rely in part on Delaware law because the California courts have held that California and Delaware law on the demand requirement are identical. *See Oakland Raiders v. Nat'l Football League*, 93 Cal. App. 4th 572, 586 (Cal. Ct. App. 2001).

March 19, 2003, April 7, 2003, June 23, 2003, and November 1, 2003, Krieger wrote to the Board reiterating the complaints relating to the PSIC transaction that he had raised in the demand letter, and also asked the Board to provide him information concerning the Canadian transaction. When the Board did not take action that Krieger and Potter found satisfactory, they sued.

## II

Having doubts about the foundation for federal question jurisdiction under 28 U.S.C. § 1331, the panel by order raised the issue of subject matter jurisdiction *sua sponte* and received additional briefing. Having reviewed the briefing and having considered the matter further, we take no position on whether Appellants' complaint raises a sufficient federal question under 28 U.S.C. § 1331 because we instead conclude that we may consider at the outset whether Potter satisfied Federal Rule of Civil Procedure 23.1. Deciding that Rule 23.1 was not satisfied, we hold that the complaint should be dismissed and we need not further address jurisdiction.

**[1]** Supreme Court precedent is clear that we "may choose among threshold grounds for denying audience to a case on the merits." *Wilbur v. Locke*, 423 F.3d 1101, 1106 (9th Cir. 2005) (*quoting Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)); *see also Ruhrgas AG*, 526 U.S. at 584 ("While *Steel Co. [v. Citizens for a Better Environment*, 523 U.S. 83 (1998),] reasoned that subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues."). These precedents apply most commonly where both of the competing threshold issues go to the court's power under the Constitution.

**[2]** However, there are non-constitutional grounds on which we may dismiss a suit before considering the existence of federal subject matter jurisdiction. These include jurisdictional

grounds that are discretionary, such as pendent jurisdiction or *Younger* abstention, *see Steel Co.*, 523 U.S. at 100 n.3, grounds of prudential standing, such as statutory standing, *see National R. R. Passenger Corp. v. National Ass'n of R. R. Passengers,* 414 U.S. 453, 465 n.13 (1974) ("Since we hold that no right of action exists, questions of standing and jurisdiction became immaterial."), and grounds that are "logically antecedent to the existence of any Article III issues," such as class certification under Federal Rule of Civil Procedure 23, *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999); *Amchem Prods. v. Windsor*, 521 U.S. 591, 612-13 (1997).

**[3]** In this case, the issue of whether Potter satisfied the demand pleading requirements of Rule 23.1 is "logically antecedent" to the issue of whether we have jurisdiction over this action. Pursuant to Rule 23.1, a putative derivative plaintiff can initiate a derivative action only if he or she makes an adequate demand on the Board under applicable state law. Fed. R. Civ. P. 23.1 (2008); *see also Kayes*, 51 F.3d at 1463 n.10. Therefore, unless we determine that a proper demand was made, there is no lawsuit over which to exercise jurisdiction. Thus, as in *Ortiz* and *Amchem*, the jurisdictional issue would not exist but for this court's determination regarding the adequacy of Potter's demand. Accordingly, it is appropriate for us to reach the Rule 23.1 issue first. *See Ortiz*, 527 U.S. at 831; *Amchem*, 512 U.S. at 613.

**[4]** We note also that a valid demand is a requirement for statutory standing under California law. *Shields v. Singleton*, 15 Cal. App. 4th 1611, 1618 (1993). Although California courts do not define the limits of our jurisdiction, this required demand supports our conclusion that the satisfaction of the requirements of Rule 23.1 is a logical antecedent to federal jurisdictional questions. *See Ortiz*, 527 U.S. at 831 (noting that Rule 23 certification is "logically antecedent to Article III concerns, and . . . pertain[s] to statutory standing, which may properly be treated before Article III standing").

Accordingly, we address whether Rule 23.1 was satisfied both because compliance with Rule 23.1 is 'logically antecedent' to assessing Article III issues, and because this raises an issue of state statutory standing.[2]

## III

The parties disagree about the applicable standard of review. Potter argues that because her complaint was dismissed, we should review the district court's dismissal de novo. Defendants argue that district court determinations regarding the demand requirement for derivative actions are reviewed for abuse of discretion.

Defendants are correct. Although dismissals for failure to state a claim are reviewed de novo, the district court's determination that Potter did not comply with Rule 23.1 or California law regarding the demand and regarding demand futility is reviewed for abuse of discretion. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 983 (9th Cir. 1999); *see also Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1210 (9th Cir. 1980) ("The district court determined that Greenspun failed to make a demand and that such a demand would not have been futile. We must affirm unless the district court abused its discretion in reaching this conclusion.").

---

[2]The dissent argues that our consideration of the demand requirement prior to the jurisdictional issue is improper under *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184 (2007). In *Sinochem*, the Supreme Court recognized that a federal court may proceed to other nonjurisdictional threshold issues without first satisfying itself of its jurisdiction, if "the resolution of the [other] issue is clear while the jurisdictional issue is difficult." Dissent at 14413. Nothing in *Sinochem*, however, abrogates the rule established in *Ortiz* and *Amchem*. *Sinochem* merely states another exception to the general rule that "federal courts normally must resolve questions of subject matter jurisdiction before reaching other threshold issues." Dissent at 14413. The *Sinochem* exception is in addition to the one articulated in *Ortiz* and *Amchem*. Because we rely on *Ortiz* and *Amchem* in this case, the requirements of *Sinochem* are immaterial to our present determination.

**IV**

**[5]** Federal Rule of Civil Procedure 23.1 permits a plaintiff to bring a shareholder derivative suit if two requirements are met. First, the plaintiff must have owned shares in the corporation at the time of the disputed transaction (the "contemporary ownership requirement"). Second, the plaintiff must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors" (the "demand requirement"). However, failure to meet the demand requirement may be excused if the facts show that demand would have been futile. *Smith v. Sperling*, 354 U.S. 91, 96-97 (1957); Fed. R. Civ. P. 23.1 (2008). In this appeal, the questions are whether Potter adequately made a demand and, if not, whether the lack of demand is excused as futile.

**A**

We first consider whether Potter made a valid demand on the Board for either or both of the transactions raised in the complaint. The parties do not dispute that a valid demand must give the board of directors the opportunity to consider and act upon the proposed litigation by presenting to the board the ultimate facts of each cause of action and the action which plaintiff wishes the board to take to remedy the alleged wrongdoing. *Shields*, 15 Cal. App. 4th at 1618; *see also Lewis v. Sporck*, 646 F. Supp. 574, 578 (N.D. Cal. 1986) (listing factors).

Defendants argue that although these elements were generally present in Krieger's letters regarding PSIC, Potter failed to make a valid demand about that transaction because she was not named in the demand letter. The November 21, 2002 demand letter was sent by Krieger alone and it did not mention Potter by name. Potter argues that the mere absence of her name should not invalidate an otherwise valid demand, and that the Board was informed of Potter's participation at

the time of the January 6, 2003 meeting, which Potter's attorney, Connon, attended.

**[6]** The gist of the Defendants' position is that the identity of the plaintiff shareholder is a required element of a valid demand, and for us the dispositive issue is whether Defendants are correct in this respect. Stated another way, the key issue is whether Potter failed to make a demand by remaining anonymous in Krieger's letters.

**[7]** In support of their contention, Defendants rely primarily upon a Delaware case, *Smachlo v. Birkelo*, 576 F. Supp. 1439, 1444 (D. Del. 1983). In *Smachlo*, the district court considered a demand letter sent by a shareholder's attorney. Like Krieger's letter in this case, the demand letter in *Smachlo* did not identify the shareholders making the demand, stating only that the attorney-author "represent[s] the owners of approximately 2,000 shares of El Paso stock . . . ." *Id.* The district court in *Smachlo* concluded that the letter was not a valid demand because it failed to include the name of the shareholder making the demand, and that "a company's board of directors should not be required to act upon the demand of an alleged shareholder when that shareholder fails to properly identify himself." *Id.*

**[8]** *Smachlo* is directly on point. Although the case applies Delaware law, California law, as we have said, is identical to Delaware law on the demand requirement. *See Oakland Raiders*, 93 Cal. App. at 586 & 586 n.5 (noting reliance on Delaware law); *Shields*, 15 Cal. App. 4th at 1621 (noting that California and Delaware law are substantively identical on the demand requirement).

**[9]** Potter's efforts to distinguish *Smachlo* do not persuade us. It is of no moment that the letter in *Smachlo* did not identify any potential plaintiffs, while the November 21, 2002 letter identified Krieger, because Krieger's known presence does not relieve Potter of the obligation to make a valid demand.

A plain reading of Rule 23.1 also supports this result. Rule 23.1 requires particularized pleading of the efforts undertaken by the plaintiff. In this case, Potter has alleged only that Krieger undertook efforts to demand action by the Board. Even if Krieger purported also to represent additional unnamed plaintiffs in Southern California, and one of these unnamed plaintiffs was Potter, the complaint simply does not show that Potter herself undertook any efforts to demand action from the Board.

The facts here make the attempt to distinguish *Smachlo* especially unconvincing, because the district court held that Krieger could not bring a derivative suit because he failed the contemporaneous ownership requirement. Because Krieger was not qualified to make a demand due to his lack of contemporaneous ownership, it would be an odd result if Potter were allowed to remain anonymous in reliance on the demand made by Krieger, who beyond doubt did not satisfy Rule 23.1.

The identity of the shareholder is also an important practical element of a demand. The identity of the complaining shareholder may shed light on the veracity or significance of the facts alleged in the demand letter, and the Board might properly take a different course of action depending on the shareholder's identity. Before a demand letter can properly invoke a duty of a corporate board to take action to correct alleged wrongdoing, the board is entitled to know with specificity the identity of the person making the demand. *See generally* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.1.08 ("The demand requirement permits the board to correct the alleged wrong, encourages intra-corporate dispute resolution, and allows the board to use its expertise and resources to control litigation.").

This is not merely a technical or unimportant requirement. Rather, the general rule of American law is that the board of directors controls a corporation. Accordingly, strict compliance with Rule 23.1 and the applicable substantive law is nec-

essary before a derivative suit can wrest control of an issue from the board of directors. As a leading treatise observes, "[t]he demand requirement is designed to promote the basic principle of corporate governance that the board of directors, and not individual shareholders, manages the affairs of the corporation." *Id.*

**[10]** Potter argues that her attorney's attendance at the January 6, 2003 meeting with members of PS's special committee amounted to a valid demand because the Board learned of Potter's identity at that time. But as Defendants point out, the complaint does not allege that the attorney said anything at the meeting that would amount to a legal demand. Nor does Potter allege that the attorney submitted any demand to the Board in writing, as California law requires. *See* Cal. Corp. Code § 800(2). The Board was entitled to receive a valid demand and was not required to piece together by inference the disparate events that, if taken together, might have been sufficient to require corporate action. Accordingly, the district court did not abuse its discretion in concluding that Potter failed to make an adequate demand.

**B**

We next consider whether Potter sufficiently alleged that making a demand on the Board would have been futile. Potter argues that her suit should be allowed to proceed even if she failed to make a valid demand, because making such a demand would have been futile. The test for proving the futility of a demand for relief is whether the facts show a reasonable doubt that "(1) the directors are disinterested and independent, or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d at 989-90 (*citing Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984) (overruled on other grounds, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000))). Potter has alleged demand futility on appeal only with regard to the Canadian transaction. She alleges that the

members of the Board were interested in the transaction or were not independent because they were dominated by the Hughes family, which held several seats on the Board.

**[11]** Potter's demand futility argument fails. Most significantly, Potter's allegations are not complete and detailed enough to excuse her from the demand requirement. "[I]n order to evaluate the demand futility claim, the court must be apprised of facts specific to each director from which it can conclude that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff." *Shields*, 15 Cal. App. 4th at 1622.

**[12]** The complaint contains few details about the members of the Board aside from the fact that they voted for the transactions that Potter disputes. These allegations, taken alone, are insufficient as a matter of law. "[W]here mere approval of corporate action, absent self-interest or other indication of bias, is the sole basis for establishing the director's 'wrongdoing' and hence for excusing demand on them, plaintiff's suit should ordinarily be dismissed." *Greenspun*, 634 F.2d at 1210 (internal citation omitted). And while Potter does make some specific accusations about the directors, only a few directors are alleged to have any interests that might excuse demand if held by a majority of the Board. A majority of the 13 directors discussed in the complaint are not alleged to have any interest that would make them unable to consider a demand made by a shareholder. Also, that the Board appointed a special committee to consider Krieger's demands regarding the PSIC transaction reflects rather poorly on Potter's argument that the same Board would not have taken at least that step to consider the Canadian transaction, which, Potter alleges, was a product of the same self-dealing.

Accordingly, Potter's allegations do not create a reasonable doubt as to the Board's overall honesty or independence, and she is not excused from the demand requirement.[3] As we have

---

[3]Potter has also not shown that demand should be excused because the Canadian transaction was not the result of valid business judgment. The

explained, "[t]he task of demanding action under Rule 23.1 is not onerous. No policy recommends eviscerating the demand requirement as plaintiff would have us do." *Greenspun*, 634 F.2d at 1210.

AFFIRMED.

---

IKUTA, Circuit Judge, dissenting:

Katherine Potter (Potter) has filed a state law derivative shareholder suit on behalf of nominal defendant Public Storage, Inc. The district court dismissed her suit on the ground that her failure to name herself in the written demand presented by the plaintiffs to the corporation deprived her of standing to maintain this action under Rule 23.1 of the Federal Rules of Civil Procedure.[1] Potter appeals, arguing that California law does not require her to identify herself by name in the written demand presented to the board of directors. Before addressing this open issue of California law, however, we should recognize our "independent obligation to inquire

---

business judgment rule is a "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson*, 473 A.2d at 812.

Potter alleges only that the Board failed to disclose the terms of the Canadian transaction, and that PS was reimbursed for expenses at less than the fair market value of the services rendered to the Canadian entities. Absent an indication that the Board lacked good faith as a whole (or at least in the majority), the allegations that some members were interested in the transaction does not rebut the presumption that the board's decision was a legitimate business judgment. *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002).

[1]Rule 23.1(b)(3) requires a shareholder to "state with particularity: any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and the reasons for not obtaining the action or not making the effort."

into the presence or absence of subject matter jurisdiction," *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1092 (9th Cir. 2007), and dismiss this case for want of subject matter jurisdiction. In bypassing this jurisdictional question, the majority strays from the Supreme Court's direction in *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) and *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1191 (2007), as well as from the Fifth Circuit's interpretation of these cases. *See Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 n.6 (5th Cir. 2002).

## I

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem*, 127 S. Ct. at 1191. Put another way, "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)).

The Supreme Court has clarified that this general rule has exceptions: "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.' " *Sinochem*, 127 S. Ct. at 1191 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). For example, a district court "may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 1192. In addition, a district court could dispose of a case on threshold grounds, such as abstention under *Younger v. Harris*, 401 U.S. 37 (1971), discretionary refusal to entertain pendent jurisdiction, *see Moor v. County of Alameda*, 411 U.S. 693, 715-16 (1973), and dismissal under the rule of *Totten v. United States*, 92 U.S. 105 (1875), which prohibits suits

against the government arising out of covert espionage agreements. *Sinochem*, 127 S. Ct. at 1191.[2]

The Supreme Court has also held it may avoid reaching subject matter jurisdiction and instead dismiss an action for failure to meet class certification requirements under Rule 23 of the Federal Rules of Civil Procedure. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999); *Amchem Prods. v. Windsor*, 521 U.S. 591, 612-13 (1997). As noted by the Fifth Circuit, this is a "limited exception for suits in which the class certification issues are 'logically antecedent to the existence of any Article III issues,' " and the class certification itself "create[s] the jurisdictional issue." *Rivera*, 283 F.3d at 319 n.6 (quoting *Amchem*, 521 U.S. at 612). In *Amchem*, the proposed class of plaintiffs included persons whom the defendants alleged lacked Article III standing to sue because they had not sustained a cognizable injury or because their injury

---

[2]*National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers,* 414 U.S. 453, 465 n.13 (1974), mentioned by the majority, addresses a different issue. The question before the Supreme Court was whether there was a private cause of action to enforce compliance with a federal statute. Although "[t]he issue has been variously stated to be whether the Amtrak Act can be read to create a private right of action to enforce compliance with its provisions; whether a federal district court has jurisdiction under the terms of the Act to entertain such a suit; and whether the respondent has standing to bring such a suit," *id.* at 455-56, the case did not actually raise a federal subject matter jurisdiction issue. As the Supreme Court explained in *Steel Co.*:

> [I]n [*National Railroad Passenger Corp.*], we did not determine whether a cause of action existed before determining that the plaintiff had Article III standing; there was no question of injury in fact or effectiveness of the requested remedy. Rather, *National Railroad Passenger Corp.* determined whether a statutory cause of action existed before determining whether (if so) the plaintiff came within the "zone of interests" for which the cause of action was available. The latter question is an issue of *statutory* standing. It has nothing to do with whether there is case or controversy under Article III.

523 U.S. at 96-97 (internal citation omitted, emphasis in original).

was not redressable. *Id.* at 612. If the class did not meet the substantive prerequisites imposed by Rule 23,[3] the Court would not need to determine the Article III standing issue. Accordingly, the Court determined that the class certification issues were "logically antecedent" to jurisdictional issues in *Amchem* and *Ortiz* because the jurisdictional issues "would not exist but for the [class-action] certification." *Amchem*, 521 U.S. at 612 (internal quotation marks and citations omitted, alterations in original); *see also Ortiz*, 527 U.S. at 831.

Neither *Sinochem* nor the class action certification cases, *Amchem* and *Ortiz*, change the Supreme Court's command that we address subject matter jurisdiction at the outset in the "mine run of cases," and reach other issues first only where the jurisdictional issue is "difficult to determine" and the other ground is relatively "less burdensome." *Sinochem,* 127 S. Ct. at 1194; *accord Ruhrgas*, 526 U.S. at 587-88 (stating that "expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of [the issue of subject matter jurisdiction] first"). In *Sinochem*, the court was faced with "a textbook case for immediate *forum non conveniens* dismissal," while the subject-matter jurisdiction issue "presented an issue of first impression." 127 S. Ct. at 1194. Moreover, "[d]iscovery concerning personal jurisdiction would have burdened Sinochem with expense and delay." *Id.*

---

[3]Fed. R. Civ. Proc. 23(a) provides:

(a)   Prerequisites.

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1)   the class is so numerous that joinder of all members is impracticable,

(2)   there are questions of law or fact common to the class,

(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)   the representative parties will fairly and adequately protect the interests of the class.

Requiring the court to address jurisdictional issues in such circumstances would disserve judicial economy. *Id.* As the Court clarified:

> If . . . a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground. In the mine run of cases, jurisdiction will involve no arduous inquiry and both judicial economy and the consideration ordinarily accorded the plaintiff's choice of forum should impel the federal court to dispose of those issues first.

*Id.* (internal quotation marks and alterations omitted).

In sum, federal courts normally must resolve questions of subject matter jurisdiction before reaching other threshold issues. Only where the other issue itself creates the jurisdictional issue (as in the class action certifications under Rule 23 in *Ortiz* and *Amchem*), or the resolution of the issue is clear while the jurisdictional issue is difficult, *see Sinochem*, 127 S. Ct. at 1194, is it appropriate for the court to proceed without confirming jurisdiction.

II

In this case, the district court dismissed Potter's claim on the ground that Potter lacked standing under Rule 23.1 of the Federal Rule of Civil Procedure due to her failure to make a valid demand on the Public Storage board of directors. The majority agrees with this approach. Maj. op. at 14402. In my view, the majority has gone astray, first by misconceiving the nature of Rule 23.1, and second by deciding a threshold issue that is neither clear nor logically antecedent to the jurisdictional question.

The majority starts down the wrong path by characterizing the threshold question in this case as being "whether Potter

satisfied the demand pleading requirements of Rule 23.1," and asserting that "[p]ursuant to Rule 23.1, a putative derivative plaintiff can initiate a derivative action only if he or she makes an adequate demand on the Board under applicable state law." Maj. op. at 14402. But Rule 23.1(b) of the Federal Rules of Civil Procedure is a rule of pleading only; it does not impose any substantive demand requirement. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96-97 (1991). As *Kamen* held:

> [A]lthough Rule 23.1 clearly *contemplates* both the demand requirement and the possibility that demand may be excused, it does not *create* a demand requirement of any particular dimension. On its face, Rule 23.1 speaks only to the adequacy of the shareholder representative's pleadings. Indeed, as a rule of procedure issued pursuant to the Rules Enabling Act, Rule 23.1 cannot be understood to "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).

*Id.* at 96 (emphasis in original). Rule 23.1(b)(3) required Potter only to "state with particularity: any effort . . . to obtain the desired action from the directors . . . and the reasons for not obtaining the action or not making the effort." *Id.* Potter's complaint met these formal pleading requirements: She stated that she "made a formal written demand on the Board of Directors," and that though the original demand letter identified her merely as a plaintiff, she was identified by name at a subsequent meeting with a Public Storage Special Committee formulated to investigate the plaintiffs' demand for suit.

Neither the district court nor the majority disputes that Potter satisfied Rule 23.1's formal pleading requirements. Rather, the majority holds that the district court correctly dismissed Potter's action on a different threshold ground, namely, that her action is deficient on the merits because she failed to establish the substantive adequacy of her demand as required

under California corporate law. Maj. op. at 14402, 14406-07. In effect, the majority holds that this issue of state law is an appropriate "threshold ground[ ] for denying audience to a case on the merits." *Sinochem*, 127 S. Ct. at 1191 (quoting *Ruhrgas*, 526 U.S. at 585) (alteration added).

I disagree with this conclusion. *Sinochem*, *Ortiz*, and *Amchem* made only limited exceptions to the general rule that we must address our jurisdiction first. They do not support dismissing an action based on a threshold ground that raises an unsettled issue of state law. California courts have not considered whether California law requires plaintiffs bringing a derivative action to identify themselves by name in a written demand. In declaring that California law imposes such a requirement, the majority relies on a two-step analysis. First, the majority notes California decisions that stand generally for the proposition that "corporate law developed in the State of Delaware . . . is identical to California corporate law for all practical purposes." *Oakland Raiders v. Nat'l Football League* 93 Cal. App. 4th 572, 586 n.5 (Cal. Ct. App. 2001); *see also Shields*, 15 Cal. App. 4th 1611, 1621 (1993). Second, the majority relies on *Smachlo v. Birkelo*, 576 F. Supp. 1439 (D. Del. 1983), in which a federal district court considered whether the plaintiff had met the demand requirement to bring a shareholder derivative suit.

In *Smachlo*, the court's jurisdiction was premised on diversity and exclusive federal jurisdiction for claims alleging violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5. *Id.* at 1441. The district court held that a shareholder demand letter was inadequate because, among other faults, it failed to identify a single complaining shareholder, gave the board only a two-week deadline for action, and answered the corporation's request for additional information by filing the derivative complaint. *Smachlo*, 576 F. Supp. at 1444-45. But the district court did not identify the source of law from which it derived

this requirement. Although the majority asserts that *Smachlo* "applies Delaware law," Maj. op. at 14405, the district court cited no Delaware case and provided no indication that it was applying Delaware law.

Based on this two-step analysis, the majority concludes that a decision by a federal district court sitting in Delaware has established a bright line California rule that plaintiffs lack standing to bring a derivative action unless they identify themselves by name in a written demand to the corporation. But the majority points to no California or Delaware case holding that the failure to self-identify constitutes a failure to make a valid demand. As noted, *Smachlo* does not expressly interpret Delaware law, and more fairly stands for the limited proposition that a putative derivative plaintiff must permit the board, as part of its reasonable investigation of the claims at issue, to ascertain the identity of the shareholder. *See id.* Considering that the directors of Public Storage were informed in a pre-suit meeting of Potter's identity, the demand in this case was arguably sufficient under *Smachlo*. *Smachlo* is thus a thin reed on which to avoid consideration of our subject matter jurisdiction in favor of a dismissal on state standing grounds.

Not only is the threshold issue identified by the majority an open issue of California law, but nothing in *Sinochem* suggests that a state standing requirement would ever be an appropriate threshold basis for dismissal. The threshold issues identified in *Sinochem* as appropriate bases for dismissing a case before reaching the question of the court's jurisdiction were federal procedural rules, not requirements of substantive state law. *See* 127 S. Ct. at 1191-93. To dismiss a case on a state standing requirement, a federal court must delve into state law to clarify often fine distinctions between threshold and merits-based issues, and may have to resolve an open issue of state law. *See Sinochem*, 127 S. Ct. at 1192-93 ("The critical point . . . [is that r]esolving a *forum non conveniens* motion does not entail any assumption by the court of substantive 'law-declaring power.' "). *Sinochem* provides no sup-

port for dismissing an action on an issue of state standing as uncertain as the demand requirement in this case.

Nor does the exception for class action certifications in *Ortiz* and *Amchem* avail the majority. As stated, *Ortiz* and *Amchem* created only "a limited exception for suits in which the class certification issues are 'logically antecedent to the existence of any Article III issues.' " *Rivera*, 283 F.3d at 319 n.6 (quoting *Amchem*, 521 U.S. at 612). Yet the California standing question raised by this case is not logically antecedent to the question of our jurisdiction and does not create a jurisdictional issue in the same way that class certification in *Amchem* created questions about the Article III standing of members of the class. *See Rivera*, 283 F.3d at 319 n.6 (stating that the *Amchem* exception is not applicable to the question whether the plaintiffs had standing because the "question would exist whether Rivera filed her claim alone or as part of a class; class certification did not create the jurisdictional issue"). While the need to determine whether members of a class meet Article III standing requirements does not arise until a class has been certified, the jurisdictional issue (whether there is a federal question or other basis for federal jurisdiction) exists whether or not Potter has made an adequate demand under California's corporate law. Although a determination that Potter lacks standing under California law to bring her derivative suit would certainly dispose of this case, *see* Maj. op. at 14402, the same can be said about any dispositive threshold issue.

The majority's approach allows a federal court to bypass subject matter jurisdiction and dispose of a case by adjudicating a difficult state law issue, despite the Supreme Court's direction that we should generally address subject matter jurisdiction at the outset. *Sinochem*, 127 S. Ct. at 1191. In my view, we should join the Fifth Circuit, and address our lack of subject matter jurisdiction at the outset, rather than rely on the limited exception articulated in *Amchem* and *Ortiz*, which

is not applicable here. *See Rivera*, 283 F.3d 315, 319 n.6 (5th Cir. 2002).

## III

The correct path here is to consider our subject matter jurisdiction first. Under 28 U.S.C. § 1331, we have jurisdiction over "only those cases in which a well-pleaded complaint establishes either that [1] federal law creates the cause of action or that [2] the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983). "The second basis for jurisdiction arises when a federal court determines that 'a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.' " *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1100 (9th Cir. 2008) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). Potter's complaint does not allege a federal cause of action,[4] and the federal statutes Potter cites in her complaint

---

[4] Count I of the complaint asserts a claim for breach of fiduciary duty against all individual defendants based upon the defendants' completion of the Public Storage, Inc. transaction.

Count II asserts a claim against all individual defendants for waste of corporate assets in light of the defendants' alleged transfer of corporate assets from Public Storage to the Hughes Family Defendants.

Count III asserts a claim of violation of Cal. Corp. Code § 25402 (prohibiting insider trading under California law) against the Hughes Family Defendants.

Count IV asserts a claim for breach of fiduciary duty and seeks a constructive trust against the Hughes Family Defendants.

Count V asserts a claim against the director defendants for aiding and abetting the Hughes Family Defendants' breaches of fiduciary duties.

do not provide for a private right of action. *See* 18 U.S.C. § 1350 (provision of the Sarbanes-Oxley Act requiring issuers to certify periodic financial reports and providing criminal penalties, but no cause of action, for violations of the section). Nor am I aware of a basis for inferring such a private right. *See Alexander v. Sandoval,* 532 U.S. 275, 286-89 (2001) (holding that a court may not infer a private right of action from a federal statute unless Congress has displayed "an

---

Count VI asserts a claim against all individuals for breach of fiduciary duties and dissemination of "materially misleading and inaccurate . . . or incomplete information." Count VI also asserts that Public Storage "has suffered damages . . . including . . . exposure to liability for violations of federal law, including but not limited to, the provisions of the Sarbanes-Oxley Act of 2002."

Count VII asserts a claim against all individual defendants for failure to pursue claims against the Hughes Family Defendants "in breach of the Individual Defendants' fiduciary duties of care, loyalty and good faith." Count VIII also asserts a direct and "aiding and abetting" claim for breach of fiduciary duty against all individual defendants, alleging that the defendants "breached their fiduciary duties of care, candor, loyalty and full disclosure," and exposed Public Storage "to liability for violations of federal law, including the Sarbanes-Oxley Act."

Count VIII alleges that certain management defendants "executed certifications pursuant to 18 U.S.C. [§] 1350 as adopted pursuant to Section 302 of the Sarbanes-Oxley Act," and that these management defendants are required to return their compensation to Public Storage.

Count IX asserts a claim against all individual defendants for "abuse of . . . control" over Public Storage.

Count X asserts a claim against all individual defendants for "Gross Mismanagement." As part of this claim, the complaint asserts that the individual defendants "abdicated their responsibilities" under the Sarbanes-Oxley Act, and by so doing, "breached their duties of care, diligence and candor in the management and administration" of Public Storage.

Count XI asserts a claim of constructive fraud against all individual defendants.

Count XII asserts a claim of unjust enrichment against all individual defendants.

intent to create not just a private right but also a private remedy," and noting that statutes focusing "on the person regulated rather than the individuals protected" fail to indicate the requisite congressional intent); *see also Walzer v. UAL Corp.*, 05 Civ. 581 (CM), 2008 WL 87944, at *2 (S.D.N.Y. Jan. 2, 2008) (holding no private cause of action under the Sarbanes-Oxley Act) (citing *In re BISYS Group, Inc. Derivative Action*, 396 F. Supp. 2d 463, 464 (S.D.N.Y. 2005)). The absence of a federal private right of action undercuts the existence of subject matter jurisdiction under § 1331. *See Grable*, 545 U.S. at 317-18 (discussing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986)).

The state law claims Potter raises also do not "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. In *Grable*, the Court determined it had federal question jurisdiction over a state claim where "the meaning of the federal statute" was an essential element of a state quiet title action, "and the meaning of the federal statute [was] actually in dispute." *Id*. at 315. Although the complaint here alleges breach of fiduciary duty to Public Storage by, among other things, failure to comply with the Sarbanes-Oxley Act's certification requirement, neither the complaint nor the parties raise a substantial dispute regarding its meaning. Rather, the complaint raises claims typical of state derivative actions; its assertions that defendants failed to comply with the Act are incidental. Because the complaint does not "necessarily" raise a "disputed and substantial" federal question, "[t]his case cannot be squeezed into the slim category *Grable* exemplifies." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 681 (2006).[5]

---

[5]Potter argues also that its claims and Public Storage's affirmative defenses will require examination of the federal requirements relating to a real estate investment trust (REIT). *See* 26 U.S.C. § 856. This issue does not appear substantial within the context of the complaint. *See Grable*, 545 U.S. at 314, 317-18.

Potter argues that we have jurisdiction under 15 U.S.C. § 78aa, which provides, in pertinent part:

> The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter [the Securities Exchange Act of 1934, 15 U.S.C. § 78a-78lll], or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

In *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers*, 159 F.3d 1209, 1211-12 (9th Cir. 1998), we held that 15 U.S.C. § 78aa provided a basis for subject matter jurisdiction where plaintiff's carefully crafted state common law claims were based exclusively on the question whether defendant's conduct complied with federal law. Similarly, in *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831 (9th Cir. 2004), we exercised jurisdiction over a complaint alleging only state law claims where relief was "predicated on a subject matter committed exclusively to federal jurisdiction," the "state lawsuit turn[ed], entirely, upon the defendant's compliance with a federal regulation," and "no state law liability could survive" unless the plaintiff could prove a federal law violation. *Id.* at 841 (internal quotation marks omitted).

In this case, however, Potter's allusions to federal law play a minor role in the complaint's claims for state law breaches of fiduciary duties. In the context of the myriad alternative (and factually specific) bases for relief asserted by Potter for each claim, the complaint does not fall under the *Sparta* rule. Potter's passing references to alleged breaches of federal law (for which there is no private right of action) are insufficient in this context to "convert a state law claim into a federal cause of action." *Easton v. Crossland Mortg. Corp.*, 114 F.3d 979, 982 (9th Cir. 1997).

Potter's complaint does not allege a federal cause of action, raise a substantial disputed issue of federal law, or turn entirely on the question whether defendants violated federal law. Accordingly, there is no basis for subject matter jurisdiction. And because we should generally consider our subject matter jurisdiction in the first instance, and there is a clear path to do so in this case, I would vacate the decision of the district court and remand with instructions to dismiss the case for lack of subject matter jurisdiction.