MEMORANDUM *
Indiana Electrical Workers Pension Trust Fund, Service Employees International Union (“SEIU”) Affiliates’ Officers and Employees Pension Fund, SEIU National Industry Pension Fund, and Pension Plan for Employees of SEIU (collectively “IEW”), appeal from the district court’s order dismissing their Second Amended Complaint (“SAC”) for failure to allege demand futility under Federal Rule of Civil Procedure 23.1.
The SAC challenged the propriety of the Hewlett-Packard Company’s (“HP” or the “Company”) Board of Directors’s (“Board”) decision to make a $21.4 million payment to former HP Chief Executive Officer (“CEO”) Carleton S. Fiorina (“Fiorina”), as part of a settlement agreement, after she was terminated as CEO. The SAC asserted direct claims on behalf of HP’s shareholder and derivative claims on behalf of the Company. The district court, however, concluded that all the claims were derivative, and that dismissal of all claims was required for failure to allege demand futility. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
We review de novo dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), accepting as true the complaint’s factual allegations and construing the pleadings in the light most favorable to the nonmoving party. Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1030-31 (9th Cir.2008). An order dismissing a shareholder derivative suit for failure to make a demand or to allege demand futility under Rule 23. 1, however, is reviewed for an abuse of discretion. Potter v. Hughes, 546 F.3d 1051, 1056 (9th Cir.2008).
1. Failure to Allege Demand Futility — IEW’s Derivative Claims (Counts IV-X)
IEW first argues that the district court erred in concluding that IEW failed to allege demand futility for Counts IV-X, which sought relief on behalf of the Company. We disagree.
“Pursuant to Rule 23. 1, a putative derivative plaintiff can initiate a derivative action only if he or she makes an adequate demand on the Board under applicable state law.” Potter, 546 F.3d at 1055; see also In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 989-90 (9th Cir.1999). Where, as here, shareholders failed to demand action from the board, they must “plead with particularity the reasons why such demand would have been futile.” Silicon Graphics, 183 F.3d at 989-90. To show demand futility, IEW was required to allege particularized facts giving rise to a reasonable doubt that the challenged transaction — here, the Board’s decision to make the $21.4 million payment — was the product of a valid exercise of business judgment.[1] See id. To do so, IEW was required to present allegations that defeat the well-recognized presumption “that in making a business decision the directors of a corporation act[ ] on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.” Aronson v. Lewis, 473 *160 A.2d 805, 812 (Del.1984), rev’d on other grounds by Brehm v. Eisner, 746 A.2d 244, 248 (Del.2000).
We agree with the district court that IEW failed to allege facts sufficient to rebut this presumption, and therefore failed to allege demand futility. IEW’s claims center around IEW’s contention that the Board, in making the $21.4 million payment, violated the terms of HP’s Severance Policy and Program, which required that HP obtain shareholder approval for severance payments exceeding 2.99 times the executive’s salary and bonus. Since the $21.4 million exceeded this limitation, IEW argues, the Board’s decision gave rise to a reasonable doubt that the payment was the product of a valid exercise of business judgment.
As the district court correctly concluded, however, IEW failed to allege particularized facts casting doubt upon the propriety of the approximately $21.4 million termination package, because only approximately $14.1 million of the overall payment was severance under HP’s Severance Policy and Program, and this amount did not exceed the 2.99 limit set forth in the Severance Policy. The remaining approximately $7.4 million was Fiorina’s entitlement under HP’s Long-Term Performance Cash (“LTPC”) program, an incentive program which enabled executives to earn cash awards if HP met certain financial targets. IEW’s principal challenge, therefore, is to the Board’s classification of the $7.4 million as an LTPC payment, instead of a severance payment subject to the terms of the Severance Program and Policy.
IEW contends that Fiorina was ineligible to receive payments under the LTPC program, and that therefore the entire $21.4 million constituted a “severance payment” awarded in violation of HP’s Severance Policy. We examine, and reject IEW’s arguments.
First, IEW argues that Fiorina was ineligible to receive payments under the LTPC program because she was involuntarily terminated and was not employed by HP throughout the entire LTPC payment vesting period, as required by the LTPC program. This argument lacks merit. Although the LTPC program’s forfeiture provisions did state that, generally, involuntarily terminated employees would not be eligible to receive LTPC payments, it is undisputed that the LTPC program was adopted under HP’s 2000 Stock Plan. Under the Stock Plan, the Plan Administrator, or HP Board, was afforded broad discretion to adjust program payments, including accelerating the vesting period or waiving forfeiture provisions, under the Plan. We fail to see how this broad grant of discretion can be construed to curtail the Board’s authority to accelerate the vesting period or waive forfeiture of payments earned under the LTPC program.
Second, the LTPC program authorized the Compensation Committee of the HP Board to increase or decrease LTPC payments in exceptional circumstances, provided that the employee in question was not a “covered employee” under § 162(m)(3) of the Internal Revenue Code. IEW contends that Fiorina was a covered employee, and therefore ineligible to receive discretionary LTPC payments in exceptional circumstances. Again, however, we disagree.
Section 162(m) provides, in relevant part, that “[t]he term ‘covered employee’ means any employee of the taxpayer if ... the total compensation of such employee for the taxable year is required to be reported to shareholders under the Securities Exchange Act of 1934 by reason of such employee being among the 4 highest compensated officers for the taxable year (other than the chief executive officer).” *161 26 U.S.C. § 162(m)(3). Whether an employee is among the four highest compensated officers, in turn, is determined by reference to total annual “salary” and “bonus” for the last completed fiscal year. See 17 C.F.R. § 229.402, and related instructions. The LTPC was a program intended to increase incentive for HP performance over an extended period. It was defined by HP as a unique program, and payments made pursuant to it which were not part of an executive’s “salary” or “bonus.” The district court, therefore, correctly concluded that Fiorina’s LTPC payment was properly classified as “other compensation,” and not “salary” or “bonus” for the purposes of determining whether she was among the four highest compensated employees and, in turn, whether she was a covered employee. The district court, thus, did not err in concluding that the Plan Administrator, or HP Board, could exercise its discretion to increase Fiorina’s LTPC payment in exceptional circumstances such as those surrounding her termination.
Third, IEW argues that Fiorina’s severance payment should have been reduced by the payment she received under the LTPC program. We are not so persuaded. Although the Severance Program provided for an offset of severance payments by any cash severance benefits paid under other HP plans, certain payments that were consistent with Company practices were excluded from this offset provision. IEW has failed to allege particularized facts showing that the Board’s exercise of discretion in making Fiorina’s payment was inconsistent with HP practices. We therefore agree with the district court that the Board could properly decline to offset her severance payment by her LTPC payment.
Last, IEW argues that HP made two “admissions,” essentially conceding that the entire $21.4 million payment was “severance,” which, in turn, gave rise to a factual dispute that precluded dismissal for failure to state a claim. This argument lacks merit. In light of the detailed breakdown of Fiorina’s $21.4 million payment filed with the SEC and made available to shareholders, we cannot say that an offhand comment by one Board member and the broad description of the entire payment as “severance” in a proxy statement raise any such factual dispute.
In sum, IEW has failed to allege particularized facts showing the impropriety of the $21.4 million payment that Fiorina received when she was terminated from her position as HP’s CEO. IEW has thus failed to allege facts creating a reasonable doubt that the Board’s decision to make the payment was the product of a valid exercise of business judgment. The district court therefore correctly concluded that IEW failed to allege demand futility, and accordingly, properly dismissed IEW’s derivative claims.[2]

*162
2. Whether Counts I-III Were Direct, Not Derivative Claims

IEW also challenges the district court’s dismissal of Counts I-III of the SAC, in which IEW alleged breach of contract, promissory fraud, and breach of the fiduciary duty of disclosure. The district court concluded that because Counts I-III failed to allege facts indicating direct harm to the shareholders, Counts I-III were actually derivative, not direct claims, and must therefore be dismissed for the same reasons as the other counts. We agree with the district court’s conclusion.
To determine whether shareholder claims are direct or derivative, we must examine both who suffered the harm alleged — the shareholders or the corporation — and who would receive the benefit of any remedy. Feldman v. Cutaia, 951 A.2d 727, 732 (Del.2008). Here, the success of Counts I-III — -which contain allegations that the Board’s deceptive behavior regarding Fiorina’s LTPC payment amounted to false promises and failure to disclose material information — depend on the success of IEW’s argument that the Board violated the terms of HP’s Severance Program, Severance Policy, or LTPC program. For the reasons discussed above this argument fails. IEW, therefore, has failed to allege conduct causing direct harm to shareholders. Counts I-III, like the other dismissed counts, fail to create a reasonable doubt that the Board’s decision was the product of a valid exercise of business judgment. Counts I-III were therefore properly dismissed for failure to allege demand futility.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9 th Cir. R. 36-3.

. The second way in which a plaintiff may show demand futility — by alleging particularized facts creating a reasonable doubt that the directors were disinterested and independent, see Silicon Graphics, 183 F.3d at 990—is not at issue in this appeal.

. IEW also argues that in approving the $21.4 million payment, the Board exceeded its authority and therefore acted ultra vires. Because the success of this argument turns on the success of IEW’s related contention that the $7.4 million was in fact a severance payment, we need not address it. Moreover, because we affirm the district court's ruling that IEW failed to allege demand futility, we need not reach the additional arguments raised by HP and the Board, including whether the SAC failed to allege sufficient facts to satisfy the heightened pleading standard under § 102(b)(7) of the Delaware General Corporate Law, see 8 Del. C. § 102(b)(7), whether there is any merit to the substantive allegations in the complaint, and whether the Board’s decision was protected by the business judgment rule even if Fiorina’s termination package did not comply with all the provisions of HP's Severance Policy, Severance Program, or LTPC program.