
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT P. BACA, | No. 10-16718 |
| Plaintiff-Appellant, | D.C. No. CV09-01283-PHX-SRB |
| v. | |
| TIMOTHY A. CROWN; et al., | MEMORANDUM* |
| Defendants-Appellees, | |
| and | |
| INSIGHT ENTERPRISES, INC., a Delaware Corporation, | |
| Nominal Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted October 24, 2011
San Francisco, California

Before: GRABER and IKUTA, Circuit Judges, and KAPLAN,** Senior District Judge.

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

** The Honorable Lewis A. Kaplan, Senior United States District Judge for the Southern District of New York, sitting by designation.

Robert P. Baca ("Baca"), a shareholder of Insight Enterprises, Inc. ("Insight"), appeals the district court's dismissal of his Second Amended Shareholder Derivative Complaint ("SAC") for failure to plead demand futility with sufficient particularity. This court reviews for abuse of discretion a district court's dismissal for failure to plead demand futility adequately. *Janas v. McCracken* (*In re Silicon Graphics Inc. Sec. Litig.*), 183 F.3d 970, 983 (9th Cir. 1999).

In a shareholder's derivative action, the plaintiff purports to sue in the right and for the benefit of the corporation. Such an action implicates Federal Rule of Civil Procedure 23.1, two aspects of which are pertinent here.

First, Federal Rule of Civil Procedure 23.1(b)(1) provides in relevant part that the complaint in a derivative action "must . . . allege that the plaintiff was a shareholder . . . at the time of the transaction complained of." As plaintiff alleges that he first purchased shares of Insight on July 19, 2002, and held them continuously until the date of the second amended complaint, which was February 8, 2010 **[ER 64]**, this contemporaneous ownership rule limits the transactions of which he may complain to those that allegedly occurred during that period.

Second, Rule 23.1(b)(3) requires, in relevant part, that a derivative plaintiff who, like this plaintiff, alleges no demand on the board of directors to pursue the claim that the plaintiff seeks to bring on the corporation's behalf "state with

2

particularity . . . the reasons for not . . . making the effort." This requirement protects the directors' right under state corporation law to exercise their business judgment as to whether to pursue a corporate claim and "prevent[s] abuse of t[he derivative suit] remedy. . . [by insisting] that the shareholder demonstrate 'that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions.'" *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95-96 (1991) (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)); *accord Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008). Rule 23.1, however, does not impose any demand requirement of its own. *Kamen*, 500 U.S. at 96-97. It merely accommodates state-imposed demand requirements. Thus, the question whether demand is excused, pertaining as it does to the internal governance of the corporation, is governed by state law. Nevertheless, the particularity requirement of Rule 23.1 "creates a federal pleading standard regarding the specificity of efforts that the plaintiff made to have the corporation's directors bring an action." 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.1.08[1], at 23.1-28 (3d ed. 2011); *see also, e.g.*, *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 (9th Cir. 1987).

In *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), the Delaware Supreme Court held that demand is excused if the derivative complaint adequately pleads facts creating a reasonable doubt that "(1) the directors are disinterested and independent

3

[or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id.* at 814 (followed by *Potter*, 546 F.3d at 1058). But that court later made clear that the "essential predicate" for application of the *Aronson* rule "is the fact that a *decision* of the board of directors is being challenged in the derivative suit." *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993) (emphasis in original). Where, in contrast, "there is no conscious decision by directors to act or refrain from acting," the question becomes "whether . . . the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id.* at 933-34. Directors, moreover, are deemed "interested" for purposes of demand futility when they "receive a personal financial benefit from a transaction that is not equally shared by the stockholders" or when they face "a substantial likelihood" of liability for approving a questioned transaction. *Id.* at 936.

Baca alleges two types of claims here. First, he alleges that Tim Crown received backdated options and that Gunning, Jones, Fisher, and Dorrance – as members of Insight's Compensation Committee – approved the issuance of backdated options ("Backdating Claims"). As the Backdating Claims do not challenge a board decision, they are analyzed under *Rales*. Second, he alleges that the Insight board

4

committed waste by not attempting to recover the allegedly excessive compensation generated by the backdated options ("Refusal to Pursue Recovery Claim"). This challenges a board decision and thus is analyzed under *Aronson*.

To pursue either claim, Baca must allege that at least half of the Insight board could not impartially and independently consider a demand. *See, e.g.*, *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004).

*The Backdating Claims*

As Baca concedes that five of the ten directors at the time he filed the second amended complaint are disinterested with respect to the Backdating Claims, that aspect of his complaint cannot stand unless it pled adequately that all five of the others are "interested." The complaint sought to do so first by alleging that Tim Crown is interested under *Rales* because he was issued backdated options and thus "receive[d] a personal financial benefit from a transaction that is not equally shared by the stockholders." *Rales*, 634 A.2d at 936. It went on to allege also that Gunning, Jones, Fisher, and Dorrance, members of the Compensation Committee, are interested under *Rales* because they face "a substantial likelihood" of liability for allegedly approving the issuance of backdated options. *Id.*

In support of his claim that Tim Crown received backdated options, Baca relies on Insight's 2006 Form 10-K, which stated that Insight's top three executives, including Crown, received some options with incorrect measurement dates between 1996 and 2005. **[ER 121]** The incorrect measurement dates were said to have resulted from inadequate documentation or, in some cases, favorable retrospective date selection – i.e., backdating. **[*Id.*]** In relying solely on the Form 10-K, however, Baca fails to identify: (1) whether any options that Crown received were backdated as opposed, for example, to having lacked adequate documentation, and (2) whether any backdated options that he did receive were given between 2002 and 2005, which was the relevant period during which Baca owned Insight stock. In other words, Baca does not plead with particularity either that Crown actually received a backdated stock option or, if he did, whether that occurred while Baca was a stockholder. Baca thus does not allege that Crown "receive[d] a personal financial benefit from a [challenged] transaction that is not equally shared by the stockholders," *Rales*, 634 A.2d at 936, or, even if he did, that the benefit arose from a transaction of which Baca has standing to complain. Accordingly, the complaint does not adequately plead facts which, if true, would justify a conclusion that demand is excused as to Crown with respect to the Backdating Claims.

Baca again depends on the 2006 Form 10-K in alleging that Gunning, Jones,

6

Fisher, and Dorrance face "a substantial likelihood" of liability for approving the issuance of backdated options as members of the Compensation Committee. *Id.* Although Insight's Form 10-K noted "instances of inadequate documentation, or retrospective date selection" for certain options that required Compensation Committee approval, Baca does not allege that any backdated option was approved in 2004 or 2005, the only years during the relevant period when all four of these directors served on the committee together. **[ER 121]**  Accordingly, he fails to allege with particularity that *all* of these four members of the Compensation Committee actually approved the stock options in question.  *See In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 965 (N.D. Cal. 2007).  Baca therefore does not plead with particularity that all of these four members of the Compensation Committee will face "a substantial likelihood" of liability.  *Rales*, 634 A.2d at 936.

To prevail on his Backdating Claims, Baca had to allege that Crown *and* all four members of the Compensation Committee were disabled from passing on a demand, as the ability of *any* of the five of them to act with the five concededly disinterested directors would have left a qualified board majority.  But his allegations fall short as to each of the five.

7

*The Refusal to Pursue Recovery Claim*

Baca's Refusal to Pursue Recovery Claim is that the Insight board's decision not to seek recovery of excessive compensation generated by any backdated options constituted waste and was not the "product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814.

Although Baca alleges that the decision not to pursue claims against those who received excessive compensation is not entitled to the presumptive validity afforded by the business judgment rule, he does not question that there are numerous valid business justifications why a corporation might choose to forego legal action in these circumstances. *See Allison v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1113 (D. Del. 1985) ("[T]he GM Board's knowledge of wrongs and failure to institute suit, without more, is inadequate to excuse demand. A general allegation that the Board acquiesced, as signified by its failure to file remedial litigation, is not sufficiently particular to demonstrate demand futility.") (citations omitted); *see also Halpert Enters., Inc. v. Harrison*, No. 06 Civ. 2331(HB), 2007 WL 486561, at *3 (S.D.N.Y. Feb. 14, 2007) (applying Delaware law and noting that a company's refusal to bring claims against directors was protected by the business judgment rule because, among other reasons, "the potential costs of litigation against the directors greatly outweighed the potential benefits"). He has not alleged with particularity any reason to doubt that a majority

8

of the board was disinterested or that their action was not a valid exercise of business judgment. Baca thus fails to satisfy the *Aronson* standard.

Accordingly, we affirm the district court's dismissal of both of Baca's claims for failure to allege demand futility.

**AFFIRMED.**