**In re HQ SUSTAINABLE MARITIME INDUSTRIES, INC., DERIVATIVE LITIGATION,**

**This document relates to: All Actions.**

**No. C11–0910RSL.**

United States District Court, W.D. Washington, at Seattle.

Nov. 28, 2011.

---

1258

Clifford A. Cantor, Sammamish, WA, John W. Hathaway, Seattle, WA, for Cem Karsan Derivatively and on behalf of HQ Sustainable Maritime Industries, Inc., William Hayman Derivatively and on behalf of HQ Sustainable Maritime Industries, Inc., Gene Niksich Derivatively on behalf of HQ Sustainable Maritime Industries, Inc., Farida Corkery–Smith Derivatively on behalf of HQ Sustainable Maritime Industries, Inc., Alan Hopkins Derivatively on behalf

of HQ Sustainable Maritime Industries, Inc.

Brett D. Stecker, Jeffrey J. Ciarlanto, Joseph M. Profy, Robert B. Weiser, Weiser Law Firm, Wayne, PA, for Gene Niksich Derivatively on behalf of HQ Sustainable Maritime Industries, Inc.

Beth A. Keller, Faruqi & Faruqi, LLP, New York, NY, Michael J. Hynes, Faruqi & Faruqi, LLP, Jenkintown, PA, Roger M. Townsend, Breskin Johnson & Townsend PLLC, Seattle, WA, for Farida Corkery–Smith Derivatively on behalf of HQ Sustainable Maritime Industries, Inc.

Lionel Z. Glancy, Louis Boyarsky, Robert V. Prongay, Glancy Binkow & Goldberg LLP, Los Angeles, CA, for Alan Hopkins Derivatively on behalf of HQ Sustainable Maritime Industries, Inc.

Andrea Delgadillo Ostrovsky, Jeremy E. Roller, Yarmuth Wilsdon Calfo PLLC, Seattle, WA, Marc D. Ashley, Marcelo Blackburn, New York, NY, for Norbert Sporns, Lillian Wang Li, Fred Bild, Kevin M. Fitzsimmons and Jean–Pierre Dallaire.

## ORDER GRANTING IN PART MOTIONS TO DISMISS AND STAYING LITIGATION

ROBERT S. LASNIK, District Judge.

■ This matter comes before the Court on the "Individual Defendants' Motion to Dismiss for Failure to Make a Pre–Suit Demand, for Failure to State a Claim, and for Lack of Personal Jurisdiction" (Dkt. # 46), "Nominal Defendant HQ Sustainable Maritime's Motion to Dismiss or Stay" (Dkt. # 50), and "Plaintiffs' Request for Judicial Notice" (Dkt. # 60). Plaintiff

alleges in this shareholder derivative action that the directors and managers of HQ Sustainable Maritime Industries, Inc., ("HQ") breached their fiduciary duties, were unjustly enriched, and were guilty of gross mismanagement of the company. The seven individual defendants and the company seek dismissal of the action or, in the alternative, a stay pending resolution of the related securities litigation. Having considered the "Verified Amended and Supplemented Shareholder Derivative Complaint"[1] and the memoranda, declarations, and exhibits submitted by the parties,[2] the Court finds as follows:

### I. Failure to Make a Pre–Suit Demand

Plaintiff has not asserted any direct claims against defendants. He specifically asserts derivative claims on behalf of HQ and seeks to recover damages suffered by the corporation. Claims brought by a shareholder to vindicate rights that could properly be asserted by the corporation are subject to the requirements of Fed. R.Civ.P. 23.1. The Federal Rules single out shareholder derivative actions for special treatment "because the law has historically been particularly wary of allowing shareholders to sue on their corporation's behalf. Because of the fear that shareholder derivative suits could subvert the basic principle of management control over corporate operations, courts have generally characterized shareholder derivative suits as a remedy of last resort." *Kayes v. Pac. Lumber Co.,* 51 F.3d 1449, 1463 (9th Cir.1995) (internal quotation marks omitted). Rule 23. 1(b)(3)(A) requires plaintiff to state with particularity "any effort by

---

1. The operative pleading was filed in *Niksich v. Wang,* C11–1005RSL (Dkt. # 27), shortly before it was consolidated into C11–910RSL.

2. The Court finds that the motions can be decided on the papers submitted. The par-

ties' requests for oral argument are DENIED. Plaintiff's request for judicial notice of certain SEC filings and a screenshot of HQ's website (Dkt. # 60) is GRANTED.

the plaintiff to obtain the desired action from the directors," a provision which is otherwise known as the "demand requirement." Plaintiff does not allege that he presented the facts underlying his claims to the board of directors or requested that they initiate this suit or take particular actions to remedy the alleged wrongdoing before filing this derivative action. Thus, the board was not given an opportunity to consider and act upon the conduct of which plaintiff complains. *See Potter v. Hughes*, 546 F.3d 1051, 1056 (9th Cir.2008).

 The failure to make a pre-suit demand will be excused, however, if plaintiff alleges with particularity "the reasons for ... not making the effort" to seek voluntary board action. Fed.R.Civ.P. 23.1(b)(3)(B). *See also Smith v. Sperling*, 354 U.S. 91, 96–97, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). Under Delaware law, plaintiff may show that demand would have been futile by: (1) alleging particularized facts suggesting that the directors were unable to exercise disinterested and independent judgment in the matter or (2) alleging particularized facts suggesting

that the underlying decision or action was not a valid exercise of business judgment but was rather uninformed, in bad faith, and/or without regard to the best interests of the corporation. *See In re Silicon Graphics, Inc., Sec. Litig.*, 183 F.3d 970, 990 (9th Cir.1999) (citing *Aronson v. Lewis*, 473 A.2d 805, 814 (Del.1984)).[3] Plaintiff asserts that at least half of the sitting directors were "interested" in the underlying conduct and/or not "independent" of each other such that their ability to act impartially on a demand would have been compromised. Opposition to HQ's Motion to Dismiss or Stay (Dkt. # 61) at 7–8.[4]

██ Plaintiff specifically alleges that all six directors have an interest in plaintiff's claims that would preclude disinterested judgment because they face a "substantial likelihood of liability" in this litigation. Verified Amended Complaint at ¶ 110(c). Under Delaware law, the fact that presentation of a demand effectively asks a director to authorize suit against himself is not, standing alone, enough to excuse a failure to make the demand. A contrary rule would (a) evis-

---

**3.** In evaluating whether demand would be futile:

> the Court must accept as true the well pleaded factual allegations in the Complaint. The pleadings, however, are held to a higher standard under Rule 23.1 than under the permissive notice pleading standard under.... Rule 8(c). To establish that demand is excused under Rule 23.1, the pleadings must comply with stringent requirements of factual particularity and set forth particularized factual statements that are essential to the claim. A prolix complaint larded with conclusory language does not comply with these fundamental pleading mandates.

*In re Citigroup Inc. Shareholder Derivative Litig.*, 964 A.2d 106 (Del.Ch.2009) (internal quotation marks and footnotes omitted).

**4.** Plaintiff also alleges that demand should be excused because the board had previously blocked attempts by one of its own members to verify information regarding company ac-

counts and customer positions. Verified Amended Complaint at ¶¶ 8, 102 and 110(a). In effect, plaintiff argues that a single demand authorizes any and all shareholders to initiate a derivative suit. Demands asserted by third-parties, whether they are employees of the corporation, attorneys claiming to represent interested parties, or other shareholders, are insufficient under Rule 23.1, however. A plain reading of the rule requires particularized pleading regarding the efforts undertaken by the plaintiff, not by other individuals. In addition, the Ninth Circuit has noted that the identity of the complaining shareholder is important because the information will inform the board's decision-making process: an anonymous or representative complaint may not adequately apprise the board of the seriousness with which the communication should be considered. *Potter*, 546 F.3d at 1056–58.

cerate the demand requirement in every case in which a claim is asserted against a majority of the board of directors and (b) expose companies to so-called "strike suits." *Guttman v. Huang*, 823 A.2d 492, 500 (Del.Ch.2003). Courts have therefore required plaintiff to allege with particularity facts which, if true, would make the threat of liability to the directors sufficiently substantial to cast a reasonable doubt over their impartiality. *Rales v. Blasband*, 634 A.2d 927, 934 (Del.1993). When evaluating the likelihood of liability, the Court should take into consideration any corporate documents or statutory provisions that insulate the director from liability for the claims asserted. *In re Baxter Int'l, Inc. Shareholders Litig.*, 654 A.2d 1268, 1270 (Del.Ch.1995).

■ As a general matter, plaintiff's allegations regarding what the outside directors, Fred Bild, Daniel Too, and Kevin M. Fitzsimmons, knew and did during the relevant time period are rather sparse. Nor does plaintiff argue in opposition that these three directors are "interested" as that term has been interpreted by the Delaware courts. Plaintiff has, however, made more specific allegations regarding the acts and omissions of the three inside directors, Lillian Wang Li, Harry Wang Hua, and Norbert Sporns. Because there were only six directors at the time plaintiff filed suit, a finding that the three inside directors faced a "substantial likelihood of liability" would excuse plaintiff's failure to make a demand. *Rales v. Blasband*, 634 A.2d 927, 936 (Del.1993).

Defendants argue that, because plaintiff has not identified a specific misstatement or actionable omission in the company's 2009 or 2010 financial statements, he has not pled with particularity facts that could justify a finding that Li, Hua, and/or Sporns face a substantial likelihood of lia-

bility. The Court agrees that plaintiff's allegations of materially false and misleading public statements and/or accounting violations are wholly conclusory and lack any factual basis. *See* Verified Amended Complaint ¶¶ 35, 43, 56, 60, 61, 65, 66, 69, 70, 75, 76, 79, 80, 84, 85, and 91. Although plaintiff states with particularity facts regarding the company's failure to complete the 2010 Annual Report (including actions taken by the individual defendants that effectively prevented the auditors from completing that report), he does not identify any prior statements regarding HQ's finances or business prospects that were inaccurate. Plaintiff essentially assumes that, because the individual defendants were less than forth-coming in the spring of 2011, they must be trying to hide past misstatements. Such conjecture and speculation cannot substitute for the particularized factual allegations required to overcome the demand requirement. Plaintiff has not shown a substantial likelihood of liability on Counts I or II of the Verified Amended Complaint that would justify his failure to make a demand regarding those claims.

■ Not all of plaintiff's claims rest solely on allegations of false statements, however. Plaintiff alleges in Counts III–VI that defendants Li, Hua, and Sporns breached their fiduciary duties, were unjustly enriched, abused their powers of control, and grossly mismanaged the company when they refused to cooperate in the Audit Committee's efforts to investigate possible breaches of the governing accounting procedures, refused to take steps necessary to allow HQ's auditors to verify company accounts and customer positions, and failed to file necessary SEC documents, resulting in a cascade of regulatory sanctions and resignations for which plaintiff seeks to recover damages. The factual allegations giving rise to these

claims are particularized and suggest that the inside directors consciously chose to disregard their fiduciary responsibilities of loyalty and good faith by failing to perform duties that were incumbent upon them and necessary for the continuing health of the company. Such fiduciary violations are expressly excepted from the exculpatory provision of HQ's certificate of incorporation. *See* Motion (Dkt. # 46) at 9. Accepting these well-pled allegations as true, the Court finds that demand would have been futile as to Counts III–VI because at least half of the board faced a threat of liability that was substantial enough to cast a reasonable doubt over their impartiality.

## II. Failure to State a Claim Upon Which Relief Can Be Granted

For the reasons discussed above, plaintiff has failed to allege facts giving rise to a reasonable inference that any of the individual defendants (or, therefore, the company) could be held liable for misstatements or actionable omissions in the company's 2009 or 2010 financial statements or that defendants Bild, Too, or Fitzsimmons could be liable under theories of breach of fiduciary duty, unjust enrichment, abuse of powers of control, or gross mismanagement. Plaintiff's allegations regarding defendant Jean–Pierre Dallaire are generic, lack detail, and do not give rise to any claim for relief against him that is plausible on its face.[5] Accepting the well-pled allegations of the Verified Amended Complaint as true, however, the Court finds that Counts III–VI against defendants Li, Hua, and Sporns are based on more than a threadbare recital of the elements of the causes of action and, when taken in the light most favorable to plaintiff, survive this motion to dismiss.

## III. Lack of Personal Jurisdiction

Defendants Bild and Fitzsimmons argue that the Court cannot properly exercise jurisdiction over them because they have not purposefully availed themselves of the privilege of conducting activities within the State of Washington. Because plaintiff has not adequately pled a cause of action against these defendants, the Court declines to decide the jurisdictional issue at this time. The Court notes, however, that the fact that Bild and Fitzsimmons were not physically present in Washington prior to the filing of this lawsuit is not dispositive: in tort cases, the Ninth Circuit applies an "effects" test that focuses on the impact defendants' acts had in the forum, not where those actions occurred. *Yahoo! Inc. v. La Ligue Contre Le Racisme,* 433 F.3d 1199, 1206 (9th Cir.2006). If defendants challenge personal jurisdiction in the future, they must address the purposeful direction line of cases, rather than relying solely on the purposeful availment cases. *See CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1077 (9th Cir.2011).

## IV. Doctrine of Visitorial Powers

Defendant HQ asks the Court to decline to exercise jurisdiction over the company because to do so would entangle Washington in the internal management and affairs of a Delaware corporation in violation of RCW 23B.15.050. This argument is based on a faulty premise. Even if the statute had the effect of divesting state courts of the power to hear cases involving foreign corporations, which it does not,[6] this Court does not stand in the

---

5. In fact, the only detailed allegations regarding Dallaire's conduct suggest that he, unlike defendants Li, Hua, and Sporns, was responsive to the Audit Committee's requests for

information. Verified Amended Complaint at ¶ 93.

6. *But see Rodriquez v. Loudeye Corp.,* 144 Wash.App. 709, 718, 189 P.3d 168 (2008), in

shoes of the state for purposes of RCW 23B.15.050. This Court is often called upon to interpret and apply the laws of foreign jurisdictions, and the exercise of jurisdiction over HQ in this litigation easily satisfies the due process constraints imposed by the United States Constitution. The Court will not, therefore, decline to hear this dispute.

## V. Stay of Litigation

■ The regulatory sanctions imposed on HQ following its failure to timely file its fiscal year end 2010 reports have spawned significant litigation. A securities class action was filed in this district on April 28, 2011, and is currently pending before the undersigned. Shortly thereafter, six different groups of plaintiffs filed complaints asserting derivative claims on behalf of HQ against various directors and officers. Four of the derivative lawsuits have now been consolidated in this action, but two of them were filed in King County Superior Court. Pursuant to the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78u–4(b)(3)(D), the Court issued an order staying discovery in the state actions "to prevent plaintiffs from circumventing the stay of discovery under the [Private Securities Litigation] Reform Act by using State court discovery...." H.R.Rep. No. 105–640, at 17 (1998).

■ The Court has inherent powers to control its docket and to promote the efficient use of resources for itself and the parties. *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Whether a court should exercise its broad discretion to stay a case depends on the balance of benefits and harms that may arise. In the circumstances presented here, the Court finds that the benefits of a

stay pending the outcome of the securities litigation significantly outweigh any hardship to plaintiff and that a stay will promote the orderly disposition of the first-filed securities action.

HQ, the company on whose behalf plaintiff brings this derivative action, would clearly be put at a disadvantage if it had to defend the securities action and nominally prosecute this derivative action at the same time. Litigating two shareholder suits, each raising similar claims but involving different pleading and legal standards, is often confusing for both the parties and the Court. In addition, a stay will promote the policies that prompted both the PSLRA and the SLUSA. Congress clearly intended that plaintiffs asserting a securities claim have more in their possession than just (1) a suspicion that the company "must have" engaged in foul play and (2) the faint hope that the liberal rules of discovery would turn up some supporting evidence. *See Joint Explanatory Statement to the PSLRA,* H.R. CONF. REP. No. 104–369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730. The PSLRA's stay of discovery in securities actions and SLUSA's rather extraordinary mandate to stay discovery in related state court actions would come to naught if plaintiff could avail itself of the federal discovery procedures simply by filing a derivative action based on the same allegations.

Opposed to these interests is plaintiff's concerns regarding delay and the potential for corporate restructuring. The delay cannot be helped. However, there is no reason to assume that the delay will be indefinite, and the time will certainly not be wasted. The Court recently appointed

which the state court applied Delaware law to construe an exculpatory provision in a certifi-

cate of incorporation.

lead plaintiff and lead counsel in the securities action, triggering the agreed-upon schedule for filing a consolidated amended complaint and motions to dismiss. Allegations and issues that will be relevant to the derivative action will be under consideration in the securities litigation, and the outcome of the first-filed suit will undoubtedly inform the strategies of the parties in this derivative action. Plaintiff's concerns regarding bankruptcy or a potential merger are speculative at best. Even if the Court assumes that HQ is in a precarious financial situation and will ultimately be forced to restructure, allowing this derivative action to proceed while HQ is defending the securities action would make that result more, rather than less, likely and would not provide relief from those risks.

For all of the foregoing reasons, defendants' motions to dismiss (Dkt. #46 and #50) are GRANTED in part and DENIED in part. Counts I and II are dismissed as to all defendants. Counts III–VI are dismissed as to defendants Bild, Too, Fitzsimmons, and Dallaire, but survive as to HQ and defendants Li, Hua, and Sporns. Plaintiff's request for judicial notice (Dkt. #60) is GRANTED. The above-captioned matter is hereby stayed until the motions to dismiss in the related securities litigation, C11–0726RSL, is resolved or until further order of the Court.